# VOLUME X

STATE V. GREEN, Crosley; 9/13/2005

IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT IN AND FOR
BREVARD COUNTY, FLORIDA

CASE NO:  05-2005-CF-004942-AXXX-XX

STATE OF FLORIDA,

       Plaintiff,

vs.

CROSLEY A. GREEN,

       Defendant.

_____/

TRANSCRIPT OF SUPPLEMENTAL CLOSING ARGUMENT PROCEEDINGS

DATE TAKEN:     September 13, 2005
TIME:          11:20 a.m. - 12 Noon
PLACE:        Viera Courthouse
              2725 Judge Fran Jamieson Way
              Viera, Florida  32940
BEFORE:       The Honorable Bruce Jacobus,
              Circuit Court Judge

This cause came on to be heard at the time
and place aforesaid when and where the following
proceedings were reported by:

LYNN DONNELLY
Court Reporter and Notary Public,
State of Florida at Large

King Reporting Service, Inc.
14 Suntree Place, Suite 101
Melbourne, Florida  32940

ORIGINAL
REPRINT

Brevard Associated Court Services, Inc.
321-242-8080  www.Kingreporting.com

001448

STATE V. GREEN, Crosley; 9/13/2005

APPEARANCES


FOR THE PLAINTIFF, STATE OF FLORIDA

Christopher R. White, Esquire
Assistant State Attorney
Office of the State Attorney
100 East First Street
Sanford, Florida  32771

Wayne Holmes, Esquire
Assistant State Attorney
Office of the State Attorney
2725 Judge Fran Jamieson Way, Bldg D
Viera, Florida  32940

Barbara C. Davis, Esquire
Assistant Attorney General
Office of the Attorney General
Capital Appeals, Criminal Division
444 Seabreeze Boulevard, 5th Floor
Daytona Beach, Florida  32118-3951


FOR THE DEFENDANT, CROSLEY A. GREEN

Mark S. Gruber, Esquire
Law Office of the Capital Collateral
Regional Counsel - Middle
3801 Corporex Park Dr., Ste 210
Tampa, Florida  33619

001443

STATE V. GREEN, Crosley; 9/13/2005

INDEX OF PROCEEDINGS

|                        | PAGE NO. |
|------------------------|----------|
| Proceedings            | 4        |
| Certificate of Reporter| 39       |

INDEX OF EXHIBITS

PLAINTIFF'S EXHIBITS

NO.        DESCRIPTION                    MARKED

* * * * * NONE * * * * *


DEFENDANT'S EXHIBITS

* * * * * NONE * * * * *

```
1   VIERA, FLORIDA; 9/13/2005
2   WHEREUPON:
3           THE COURT:  Let's get everybody to state their
4       appearance for the record.
5           MR. WHITE:  I'm Chris White here on behalf of
6       the State Attorney's Office, and this fellow over
7       here is Wayne Holmes, also from our office.
8           MS. DAVIS:  I'm Barb Davis from the Office of
9       the Attorney General.
10          MR. GRUBER:  Mark Gruber, CCRC, here on behalf
11      of Crosley Green.
12          THE COURT:  Actually, I think I brought it up,
13      and then Mr. Gruber filed a motion.  Really, the
14      issue would be, or that I wanted you all to argue
15      was the Rompilla case, which came out after we had
16      our final argument.  It seemed to me that the case
17      could have some impact on this case because it had
18      some similar issues.  I thought, in fairness to
19      everybody, we ought to argue those, if it applies,
20      and if so, how.
21          Mr. Gruber, you actually filed, well, it was
22      my motion but you filed a motion also.  Do you want
23      to argue first?
24          MR. GRUBER:  Yes, sir.  I imagine they crossed
25      in the mail or something like that, but as soon as
```

1        Rompilla came out, I filed some supplemental

2    notices in this case, and some others that would

3    have some impact.  It's not merely my view that the

4    case has some impact in this case, it's virtually

5    diapositive of the issue.  In fact --

6        THE COURT:  Well, there are some factual

7    differences.  Would you agree?

8        MR. GRUBER:  Well, there are.  But the primary

9    factual difference I think is one that favors my

10   position.

11       THE COURT:  Okay.

12       MR. GRUBER:  But as far as the particularity

13   of the case coming out of the United States Supreme

14   Court as to this particular case, it's really

15   remarkable.

16       Of course it dealt with defense counsel's

17   ineffectiveness, grounded on failure to review a

18   court file with regard to a prior conviction, which

19   is something that has been established in this case

20   with regard to Mr. Parker and New York, youthful

21   offender adjudication.

22       I said I agree that there is one factual

23   difference and maybe I better jump to that.

24       The facts that were developed in mitigation in

25   the Rompilla case were essentially biographical and

1    mental mitigation types of facts.  Those would then

2    contrast with what was presented at the sentencing

3    phase of the trial with Rompilla.

4         There are some interesting issues surrounding

5    that, but I believe the Rompilla position talked

6    about those facts largely in context with

7    prejudice, and supposedly that prejudice had in

8    fact been shown.

9         Now the particular facts that were developed

10   by CCR were the use of perhaps a 24-cent postage

11   stamp or something of that nature, and probably a

12   phone call to the New York authorities where that

13   the prior violent felony conviction, which the

14   trial court found to have existed out of New York,

15   in fact did not exist and never had existed.

16        The sentencing judge in this case found that

17   Crosley Green had been convicted of an armed

18   robbery.  That was never true.

19        THE COURT:  It was a robbery, a third degree.

20        MR. GRUBER:  It was a robbery in the third

21   degree, which stayed in place for approximately a

22   week.

23        THE COURT:  But it's still, for the purposes,

24   I mean I read all those cases, but in my view that

25   existed.  In other words, that was an aggravator,

1        albeit it was a third-degree robbery and not an

2        armed robbery.

3            MR. GRUBER:  I'm not sure if we're in

4        agreement on that --

5            THE COURT:  We aren't on that.  But in my mind

6        it counts, whatever it was it counts.  Because the

7        court, in the sentencing scheme, made it a youthful

8        offender-type thing, which New York vacated it and

9        all the things happened.

10           But the cases seemed to say it wasn't a

11       juvenile crime, it was not a juvenile crime.  It

12       got treated as a youthful offender, and the cases

13       seems to say that that can count in this death

14       penalty scheme as an aggravator.

15           But I agree with you, the court found it to be

16       an armed robbery and that's what the jury said and

17       that's not what it was.

18           MR. GRUBER:  Yes, sir.  Well, I disagree with

19       the first half of your portion.

20           THE COURT:  I understand that.  But for

21       argument sake, let's say it does count.  It wasn't

22       an armed robbery, it was a robbery in the third

23       degree.

24           MR. GRUBER:  It appears a little bit of the

25       position that I've been taking, but not a whole

1    lot, because I've addressed that point I think

2    numerous times, both orally and in writing.

3         Even assuming that could be the case, the

4    issue in Rompilla is whether or not there would be,

5    one of the issues was certainly whether or not

6    there would be some way for counsel to rebut the

7    aggravated circumstances if they knew that the

8    prosecutor was going to use, based on records --

9         THE COURT:  See, in Rompilla the state had the

10   file, they had the file.  The defense lawyer never

11   looked at it.  They make a big to do about, well,

12   it's in the courthouse, you could have gone down to

13   get it.  In this case the state didn't have the

14   file, nor could they get the file.

15        MR. GRUBER:  Was it the state that had the

16   file or the court that had the file?  My impression

17   was, it was the court that had the file.

18        THE COURT:  The file was in the courthouse.

19   In other words, in this case it's a little bit

20   different because of the youthful offender thing.

21   The file was basically sealed, the only people that

22   could get the file was Mr. Green.  I think he can

23   get the file, but the state had no access to the

24   file.

25        MR. GRUBER:  His defense attorney Mr. Parker

STATE V. GREEN, Crosley; 9/13/2005

1    could have gotten the file.

2         THE COURT:  He could have certainly done that.

3    I agree with you, that's true.  But in Rompilla the

4    state had access to the file, as well as the

5    defendant, and they made a big to do.  The file was

6    sitting there in the courthouse.  You could have

7    gone down and read what was in it, and he didn't do

8    that.  And Judge Souter said, Well, that's

9    ineffective of counsel.

10        It is a strange case because, as you said, on

11   the family history and the mental history, I mean

12   his whole family is saying there's nothing wrong

13   with him, and he's not really participated and he

14   relied on that.  That file adds something to the

15   contrary, but it is kind of bizarre.

16        MR. GRUBER:  What developed here, the

17   discussion, the background mitigation that could

18   have been done was well within the context of

19   prejudice under Strickland.

20        The prejudice here I think is actually

21   stronger than it was in Rompilla.  That was why I

22   said the main factual distinction is actually

23   beneficial to Mr. Green because --

24        THE COURT:  What do you think the prejudice

25   is?

1      MR. GRUBER:  It's overwhelming.  There was no

2    rebuttal given to the aggravating circumstance of

3    an armed robbery, a reported aggravated

4    circumstance of an armed robbery in this case,

5    other than Mr. Parker saying, hey, he was young at

6    the time, or something to that extent.  There

7    simply wasn't anything presented at the sentencing

8    phase of this case.

9        What could have been presented and what should

10    have been presented, at a minimum, is that he is

11    not convicted of what they're saying he's guilty of

12    having done.

13        Now, of course, one of the points emphasized

14    by the state that was also discussed in Rompilla

15    was that Mr. Green, having been to prison for an

16    armed robbery, is now back out committing an armed

17    robbery.  Now somebody is dead.  Well, that's a

18    very prejudice, a very aggravated circumstance.

19        That could have been rebutted, at least to

20    some extent, by saying what he was convicted of was

21    not fact, what the prosecutor is arguing is simply

22    not true.  That could have been done at the trial

23    level.

24        Beyond that, the Florida Supreme Court, on

25    direct appeal, conducting a proportionality

001457

1    analysis, struck the agg aggravator --

2         THE COURT:  Right, exactly.

3         MR. GRUBER:  And expressly said, based on the

4    remaining three aggravating circumstances, that

5    related to juvenile.

6         So I think I like the types of situations in

7    Rompilla where there's a comparison going on

8    between the mitigation evidence that's produced at

9    the trial level, and then what is typically more

10   extensive mitigation produced at the postconviction

11   level, and argument that there's prejudice kind of

12   based on a comparison of the two, which we already

13   have in this case just based on other matters.

14        This one is much more tightly focused, and we

15   can point specifically to degrees of offense, to

16   degrees of culpability, and to the consequences

17   when the case went up on direct appeal.

18        That's the gist of my argument, but there's

19   just a couple more things that I want to discuss.

20        THE COURT:  Go ahead.

21        MR. GRUBER:  One is, there has been this

22   historical perhaps give and take in Supreme Court

23   jurisprudence over the role of the ABA guidelines.

24   The Rompilla case particularly just reinforces what

25   had been becoming apparent in the Wiggins case.

1          I had a lengthy argument based on the ABA

2      guidelines of 1989, guidelines that were present at

3      the time that this trial was being conducted,

4      contained in the written argument that's been

5      submitted.  It starts at page 22.

6          I also noted, just glancing over this again,

7      that there's a footnote referring to the fact that

8      cert. was granted in Rompilla in our written

9      argument submitted back in February of this year.

10         Then, I believe it's footnote 7, and this

11     follows up a text prepared, it is similarly a

12     discussion about the ABA standards all saying that

13     counsel should have done what I'm saying he should

14     have done here.  They're referring back to the ABA

15     standards going back to 1982.  Again, a reference

16     to 1989, which we developed at length with a

17     written argument.  Also with Professor Dow's

18     testimony.  If the court would recall, I believe he

19     was on the stand with a copy of the guidelines,

20     reading off of them at times during the course of

21     testimony in this case.

22         Particularly the line that's been quoted

23     often, and I'll do it here again.  ABA guideline

24     11.4.1.C (1989).  "*Investigations into mitigating*

25     *evidence should comprise efforts to discover all*

001450

1    *reasonably available mitigating evidence and*

2    *evidence to rebut any aggravating evidence that may*

3    *be introduced by the prosecutor."*  So that point

4    has now been emphasized over and over again, we've

5    emphasized it.  That's why I feel like the issue is

6    virtually dispositive here.

7         Have I said enough?  My point is that Mr.

8    Parker, and I believe the court is in agreement,

9    simply by making a phone call or by a letter to the

10   New York authorities, could have conducted

11   sufficient investigation to find out what we found,

12   or CCR found really, quite a few years ago now.  To

13   draw a distinction between that and the effort to

14   go to the local courthouse and look at the file,

15   okay, there's some there, but that's a lot of

16   superficial --

17        THE COURT:  Well, it seemed like Justice

18   Souter did kind of emphasize that.  That was, in my

19   view, at least something that, what effect it had,

20   I agree, I haven't really made up my mind, but it

21   wasn't as simple as that, that's for sure.  The

22   state didn't have it at all, they couldn't get it.

23   Mr. Parker, for whatever reason, didn't get it

24   either.

25        MR. GRUBER:  Mr. Parker spoke to that and said

001460

1    that he should have.

2            THE COURT:  I understand.

3            MR. GRUBER:  I believe there are quotations

4    from his testimony.

5            THE COURT:  Right.  I think he covered it.

6            MR. GRUBER:  I'll go ahead and say just as a

7    side, I think a possible subtext under Rompilla, it

8    goes a little bit beyond what the court just said,

9    because these are public defenders and out of town.

10   I think public defenders are probably at the

11   courthouse every day looking at background files

12   and so forth, it's a very handy resource.  That may

13   have been a subtext going on, saying what they did

14   here is really kind of outrageous for public

15   defenders.

16           But in a capital case in particular, I

17   wouldn't say anyone but certainly a capital --

18           THE COURT:  Well, I mean they put a heck of a

19   burden on defense counsel, the case did when they

20   basically said, Look, you can't believe anybody

21   that tells you anything, family members, your

22   client.  What's that about?

23           MR. GRUBER:  Well, that's with regard to

24   mitigation.

25           THE COURT:  You have to collaterally look.  In

1  other words, they put some burden on you to

2  collaterally go beyond what they've told you.

3  That's pretty cumbersome.

4       MR. GRUBER:  That's biographical mitigation.

5       THE COURT:  Right.

6       MR. GRUBER:  Yes, they do put that burden on.

7       But with regard to looking in your client's

8  file with regard to a prior conviction that defense

9  counsel knows is going to be used, and in this case

10  was in fact the entire evidentiary presentation by

11  the prosecution.

12       THE COURT:  Well, the file wasn't used, but

13  evidence of the conviction was.

14       MR. GRUBER:  That actually is true, the file

15  was not used.  However, there was enough --

16       THE COURT:  But the crime that resulted in the

17  file was used.

18       MR. GRUBER:  There were enough auxiliary

19  documents.  It was so obvious that the prosecution

20  was dodging around the fact that there is not a

21  judgment and sentence, and that did prompt Mr.

22  Parker eventually to make an objection to the

23  introduction of the, well, something or other about

24  it.  I have detailed it out before, but he did make

25  an objection that was overruled.

001482

1          But, at the same time, that was never enough

2    to motivate him to send that letter to the New York

3    authorities to make a simple phone call.

4          In fact, I might add with that by the way, Mr.

5    Parker also said that he came up during the trial,

6    was fairly confident about what the outcome would

7    be in the guilt phase, and didn't really start his

8    mitigation until after that.

9          He did not oppose, it was Officer Copper and

10   whoever the probation officer or parole officer

11   was, he didn't take that position through those

12   individuals in preparation for the penalty phase.

13         He did some things but he didn't do what

14   obviously is required here, what the Supreme Court

15   is saying is required under the 1989 guidelines.

16         THE COURT:  Let me ask you this.  Robbery,

17   albeit it's a third-degree robbery, is still a

18   violent felony, correct?  It still counts.  So the

19   aggravator, for argument sake, could still be

20   there.  It wouldn't be an armed robbery, it would

21   be a robbery, so the jury would still hear that.

22   Do you think that would affect the outcome, or what

23   would that have on the outcome in the penalty

24   phase?

25         MR. GRUBER:  There's an interesting line in

001403

1  Rompilla that I would like to quote.  It's right at

2  the end of the opinion:  Although we suppose it is

3  possible that a jury could have heard it all but

4  still have decided on the death penalty, that is

5  not the test.

6    That sounds, to me, pretty much what the

7  court's question was.  If the jury in this case had

8  heard that the defendant Crosley Green had been

9  convicted of a third-degree robbery out of New York

10  --

11    THE COURT:  Isn't that what Strickland says?

12  Didn't Strickland say the outcome has to be

13  different?  Isn't that kind of the Strickland

14  standard?

15    MR. GRUBER:  A reasonable probability of a

16  different outcome and the word reasonable is

17  important.

18    THE COURT:  I agree with you, but that's what

19  it said.

20    MR. GRUBER:  So the straight outcome,

21  determinate of the test using those words, the

22  answer is no.

23    THE COURT:  Yeah, reasonably.

24    MR. GRUBER:  Well, going on to quote the rest

25  of that sentence from Rompilla:  The evidence taken

001484

 1         as a whole, quote, might well have influenced the

 2         jury's appraisal of Rompilla's culpability.

 3              That is Rompilla quoting Williams quoting

 4         Williams v. Taylor.  Sound to me like they mean it.

 5         And as far as might well have influenced the

 6         outcome, I think that is almost obviously true.

 7              THE COURT:  They're just saying a robbery, an

 8         armed robbery.

 9              MR. GRUBER:  Yes.  Because the prosecution is

10         arguing he's out there committing an armed robbery

11         with a firearm and --

12              MR. WHITE:  Wait a minute.  I disagree with

13         that.  I have to object to mischaracterizing the

14         evidence.  I never mentioned firearms in my

15         argument, I never did.  You can look at the

16         transcript.

17              THE COURT:  The court made that finding.

18              MR. WHITE:  The court made that finding,

19         probably based on the records from DOC which showed

20         armed robbery.

21              THE COURT:  Yeah, the probation officer Rubin,

22         didn't Rubin say armed robbery?

23              MR. WHITE:  Right.  My assessment is Rubin

24         said armed robbery.  Copper said robbery.  I argued

25         robbery.

001405

1    All I argued was that he had a conviction, and

2    I argued that it's interesting that he had this

3    conviction before his parents ever died. And the

4    defense is trying to argue to you, that was such a

5    huge thing in this life that maybe caused him to be

6    where he is now. Well, folks, he was already

7    committing a robbery before that ever happened,

8    okay? But I never said armed robbery.

9    THE COURT: Okay. But Rubin did and the court

10   founded on that.

11   MR. WHITE: I agree.

12   MS. DAVIS: May we argue?

13   THE COURT: Go ahead.

14   MS. DAVIS: Judge, our position is exactly

15   opposite of Mr. Gruber. Rompilla is a very

16   fact-specific case. I prepared a memorandum of the

17   significant parts, just a little memo. I cut out

18   the significant parts of Rompilla. In the case I

19   numbered each section so that Section 1, here's the

20   quote and our comment.

21   Now, in Rompilla, what happened is the state

22   used a lot of testimony from the rape victim, and

23   the defense counsel did not even have that

24   transcript to impeach her with. The court file was

25   right downstairs, accessible to him.

001463

1       THE COURT:  Right.  I read the case.

2       MS. DAVIS:  Also, there was a plethora of

3  mitigating circumstances --

4       THE COURT:  About his mental, right.

5       MS. DAVIS:  -- by looking at that, which

6  actually made the information that it called into

7  question the information that defense counsel did

8  have.

9       THE COURT:  From his family and from him.

10      MS. DAVIS:  Yes.  So it showed that there was

11  all this mitigation available.  He could have

12  impeached the rape victim.

13      Now, on this case, Judge Antoon's order on

14  page 2840 in the record on appeal, he says armed

15  robbery.  However, on page 2845 he says robbery.

16  So if you have his judgment and sentence order, at

17  one point he says armed robbery, at one point he

18  says robbery.  However, the jury knew it was

19  robbery, because the testimony which was offered at

20  trial, Daniel Copper who --

21      THE COURT:  Wasn't the focus in the penalty

22  phase by the state the prior felony, wasn't that

23  what the focus was about?

24      MS. DAVIS:  But the jury knew it was a

25  robbery, not an armed robbery.

1          THE COURT:  Well, the judge said an armed

2     robbery.  Did Mr. Rubin say an armed robbery?  Was

3     he the one that said it?  He was the probation

4     officer.

5          MS. DAVIS:  The probation officer said he was

6     charged with armed robbery, and I can give you the

7     page cites on those.

8          THE COURT:  I remember somehow reading Rubin's

9     stuff.

10         MS. DAVIS:  Mr. Rubin was a parole officer.

11    He said he was on parole for armed robbery.

12    However, the state called Mr. Copper, who is the

13    police officer from New York, and he said no.  He

14    was arrested for armed robbery, page 2216, but he

15    plea bargained and he was only convicted of

16    robbery, he only pled guilty to robbery.  Page

17    2217.  So that's what the jury knew.

18         THE COURT:  Well, they knew armed robbery?

19         MS. DAVIS:  No, they knew robbery.  2217.

20         THE COURT:  Well, they knew both, didn't they?

21    Both of them were in the record, and the judge said

22    armed robbery.

23         MS. DAVIS:  However, the judge said in his

24    order, which was not before the jury, in one place

25    he said armed robbery, in another place he said

001400

1    robbery.

2         THE COURT:  Big difference, do you think?  Is

3    there a difference?

4         MS. DAVIS:  Well, they're both prior violent

5    felonies.  When you're looking at this, you have to

6    give the benefit of the doubt to Judge Antoon.

7    It's right here in the record, he was charged with

8    armed robbery, it was pled down to robbery.  That's

9    right in the record, page 2217.

10        THE COURT:  When you read that file, the file

11   that Mr. Parker didn't read, there was a statement

12   in there from somebody that interviewed Mr. Green.

13   It went into great detail about there was no

14   identification of him, he was sitting in jail, he

15   couldn't get out of jail, he was a migrant worker

16   and all this kind of stuff.

17        He made some analysis that Mr. Green made a

18   plea to get out of jail.

19        MS. DAVIS:  And Mr. Parker brought --

20        THE COURT:  I don't know how that would have

21   played in or not played in, but it was all in that

22   file.

23        MS. DAVIS:  Well, when you look at the record,

24   Mr. Parker was all over this youthful offender, so

25   you can't slight Mr. Parker for what he did.

001460

1       THE COURT:  Well, the youthful offender

2   really, I don't know, that doesn't have a whole lot

3   to do with it in my mind.  But the argument was

4   there and it shouldn't have been in there in the

5   first place, but the case is different.

6       MS. DAVIS:  Well, first of all, we're --

7       THE COURT:  Mr. Parker never read the file, so

8   he didn't know what the person that interviewed

9   Mr. Green had said.

10      MS. DAVIS:  No.  But I mean, what has CCR now

11  shown us, that would be significant as far as

12  Crosley Green in mitigating circumstances.

13      THE COURT:  It's kind of like Mr. Rompilla.  I

14  don't know how it played out in the end, but maybe

15  it wouldn't even be admissible.  But there was

16  stuff in there that seemed, that could have had

17  some affect on how you rebutted the mitigating

18  evidence.

19      MS. DAVIS:  However, you would have to look at

20  anything additional as compared to what Judge

21  Antoon found.

22      As far as Mr. Parker's ineffectiveness, he had

23  done a motion in limine on the youthful offender,

24  he challenged the youthful offender.  He said,

25  First of all, I don't think it's admissible, I

001470

1   think it's too remote.

2        THE COURT:  But it was.  He was wrong, the

3   court was right on that, I think.  The youthful

4   offender didn't keep it out, I don't think.  I

5   think Judge Antoon was correct on that ruling and

6   the court agreed with him.  But in reading the

7   cases, I think that was the correct ruling, so that

8   wasn't the issue in my mind.

9        MS. DAVIS:  So the issue is whether Rompilla

10  affects -- Mr. Parker knew it was robbery.  It's

11  all in the record that it's robbery, it was pled

12  down to robbery.  Even got before the jury, and the

13  only reason he did this is because he was a kid, he

14  made a plea bargain because he was a kid, so he

15  minimized the effects of that.

16       Now, even at the sentencing hearing, Mr.

17  Parker was arguing to Judge Antoon again, I don't

18  think this is admissible.  You shouldn't give much

19  weight to this.  He was a kid.  It's more

20  mitigating than aggravating is what he argued.

21       Now, Judge Antoon may have made a

22  misstatement.  In one place in his order he puts

23  robbery, in another place he puts armed robbery.

24       THE COURT:  And there was evidence to armed

25  robbery from Rubin.

001471

1       MS. DAVIS:  Subsequent to Mr. Rubin saying he

2   was sent down here on parole for armed robbery --

3       THE COURT:  Doesn't the jury have to decide?

4   I mean, that's just a fact they heard.  Which one

5   is it, armed robbery or robbery?

6       MS. DAVIS:  But then we have the police

7   officer saying no, but he pled it down to robbery.

8       MR. GRUBER:  I'm going to object to what I

9   believe is a misstatement of the record.  I've read

10  it, and what the court seems to be doing is going

11  in the same direction.

12      THE COURT:  Yeah, I'll read that.  I remember

13  the police officer, he was horrible if I recall.

14  That whole testimony was kind of messed up, mainly

15  because they didn't have the file.

16      MR. GRUBER:  I've gone over this record alot,

17  I may not be remembering the specifics right now,

18  but nobody in that trial knew that the case had

19  been pled down to a robbery.

20      THE COURT:  I'm not sure that's right.  I'll

21  read it again myself.

22      MS. DAVIS:  Judge, I just gave you the record

23  cite --

24      THE COURT:  It said robbery.

25      MS. DAVIS:  -- and it's 2217.  Here it is for

1      Mr. Gruber.  That's from the hearing of

2      September 27th of 1990.  It's right here, page

3      2217, which is page 45 of that hearing, which was

4      the advisory proceedings before the jury.

5          THE COURT:  Your position is Rompilla doesn't

6      change anything?

7          MS. DAVIS:  Rompilla doesn't change anything.

8      My main points are on the memo.  Rompilla is very,

9      very case specific.  I gave you all the cases which

10     have cited to Rompilla since it was decided.  Now,

11     the top three --

12         THE COURT:  All those have come out since?

13         MS. DAVIS:  All of these have come out citing

14     Rompilla, and these are just the ones where it's

15     cited in the opinion.  There's some other

16     concurring and dissenting opinions.

17         Rompilla is cited alot as a general principle,

18     but the top three are cases where, under certain

19     circumstances, they found counsel ineffective.  The

20     rest of them is where they found counsel was not

21     ineffective, so it's a very fact-specific inquiry.

22         What we're asking is, okay, was Mr. Parker

23     deficient in failing to find this tiny scintilla of

24     information when he challenged repeatedly that

25     youthful offender conviction?  He wanted the judge

1      to consider with mitigating, he told the jury it

2      was a plea bargain and he was just a kid when it

3      happened.  He moved in limine to keep from --

4          THE COURT:  So you're saying he made the right

5      argument, even though he never read the file

6      basically?

7          MS. DAVIS:  He knew it was a robbery, he knew

8      it was a youthful offender.  It's all over the

9      record where he's going, It's a youthful offender

10     conviction for a robbery in New York when he was a

11     kid, and he even got it in that he was 15 at the

12     time when he actually was 18.

13         THE COURT:  He was 18, yeah.

14         MS. DAVIS:  So Mr. Parker did a heck of a job

15     here.

16         You look at Rompilla, and the reason they're

17     faulting defense counsel is, and the emphasis that

18     Justice Souter put on these is that it's right

19     there in the courthouse --

20         THE COURT:  I know he said that.

21         MS. DAVIS:  The transcript was not even used.

22     They read the transcript of this emotional rape

23     testimony, and he didn't even look at the

24     transcript to soften of blow of that.

25         THE COURT:  Plus, the file also revealed all

001473

1       the biographical things, mental issues that were

2       unknown to him at the time.

3           MS. DAVIS:  A laundry list of all that stuff.

4       They also talked about residual doubt, all these

5       things could have led to residual doubt.  Well,

6       Florida doesn't recognize residual doubt, so no

7       residual doubt arguments.

8           These witnesses were subject to cross

9       examination and Mr. Parker did a good job cross

10      examining, particularly the police officer from New

11      York who knew the most about.  The parole officer

12      was just like, You know, this isn't up to me,

13      whatever, I don't know.  The police officer was the

14      arresting officer that knew exactly what happened

15      in New York.

16          And Souter pointed to all this mitigation that

17      the accumulated effect of all this stuff, they

18      would have found in that file which contradicted

19      it, that would have destroyed the benign conception

20      of the picture that counsel had.

21          The only bit that CCR has shown us doesn't

22      change anything.  The fact is, people were not

23      going to come in and testify for Crosley Green.  He

24      just didn't have a whole lot of mitigation.

25          And then the prejudice focus.  Justice Souter

001475

```
 1        looks and he says, the undiscovered mitigating
 2        evidence taken as a whole, which means that whole
 3        body of discovery that they would have discovered.
 4            Now here, CCR has not presented you this whole
 5        body like Rompilla.  Rompilla is completely
 6        distinguishable, not only on the youthful offender
 7        which Mr. Parker was right, Judge Antoon was right
 8        about.  Judge Antoon's order is inconsistent, he
 9        said armed robbery in one place, said robbery in
10        the other, but the record shows it's a robbery.
11        They knew that and it was quite clear from the
12        record.  It's completely distinguishable.
13            THE COURT:  Thank you.
14            MS. DAVIS:  If Mr. White has anything to add?
15            MR. WHITE:  If I might?
16            THE COURT:  Yes, sir.
17            MR. WHITE:  Very briefly.  I would point out
18        to the court that if Mr. Parker had obtained these
19        records, he would have been obligated to make the
20        state aware of them in discovery.
21            THE COURT:  Right.
22            MR. WHITE:  Now, this particular aggravator is
23        one where you not only prove up the conviction but
24        you're allowed to, as they did in Rompilla, prove
25        up the entire circumstances of the crime in order
```

1       to show the nature of the violence or the degree of

2       the violence so the jury could determine what

3       weight to give that particular conviction.

4           So along with the fact that he may find out

5       that, well, in reality it was only a robbery and

6       not an armed robbery, the true nature of the crime

7       is still an armed robbery presumably, that's what

8       he was charged with.

9           So if we have those records and we can get to

10      the victim, we could bring a victim down here and

11      have him testify about this man holding a shotgun

12      in my face and taking my wallet, which is what I

13      understand occurred.

14          THE COURT:  I don't remember that.  Is that

15      what it was?

16          MR. WHITE:  I believe that's what it was.

17          So what the court has to consider is the

18      prejudice, I'm going towards the prejudice.  Mr.

19      Parker should have gotten -- the argument that's

20      being made at this point essentially is he should

21      have gotten the records.  If he had, he would have

22      discovered it was only a robbery, not an armed

23      robbery.  He could have make that distinction clear

24      for the court with that particular record.

25          What I'm proposing to the court is yes, okay,

1    so he didn't do that.  What's the prejudice?  Well,

2    if he had done that, the state could have put on

3    more facts about exactly what it was.  We aren't

4    precluded from doing that.  And, in fact, it was

5    armed robbery with a firearm, which was never

6    mentioned, by the way.

7         THE COURT:  There was one case I read, I

8    remember facts but not the names, but you all will

9    probably remember the case.  It's a Florida case.

10   It's where the lady came down from North Carolina.

11   The defendant had gone to the laundromat, and the

12   laundromat lady had thrown him out.  He came back

13   and knocked on the door.  She opened it, and he

14   shot her in the head.  Do you remember that case?

15   It was a juvenile crime at the time.

16        MR. WHITE:  Was that maybe either Campbell or

17   Merck?

18        THE COURT:  It was Merck, I think.  Because he

19   had six other violent felonies.  He had a host of

20   robberies that all counted, and this was like

21   number seven.  The court said that shouldn't have

22   been included because it was a juvenile crime, it

23   shouldn't have counted, and they reversed the

24   penalty phase on that.  I think they had six other

25   aggravators.  It was a strange case.

1    MR. WHITE:  If you want to go back and review

2  that, I'm pretty sure it was either Campbell or

3  Merck.

4    THE COURT:  It was Merck.

5    MR. WHITE:  It had to be Merck because

6  Campbell was, okay, they didn't reverse anything.

7    THE COURT:  Campbell was the stabbing one, I

8  think.

9    MR. WHITE:  I believe it was.  Campbell was

10  the case that we all knew about at the time when we

11  tried Green.  So if you want to review that and try

12  to figure out --

13    THE COURT:  No.  But what stuck in my mind was

14  they had six armed robberies that all counted,

15  seven, I think.  I may be wrong in the number, but

16  I'm almost sure it was six armed robberies that

17  were all committed as an adult.  Then this lady

18  came down on this one, and they said you've got a

19  new penalty phase.

20    You all lost an aggravator on appeal in this

21  case.

22    MR. WHITE:  The heinous and atrocious?

23    THE COURT:  Yes.

24    MR. WHITE:  In looking at the prejudice, I

25  would just point out to you, what you have here is

001473

```
 1      the difference between a robbery and an armed

 2      robbery.  Not only is that the difference, but I

 3      don't know if the jury could figure out which it

 4      was.

 5           As you pointed out and as we pointed out, at

 6      different places in the record it's described in

 7      different ways.  It's described as an armed robbery

 8      by Mr. Rubin, it's described as being a robbery by

 9      Mr. Copper.  And my argument to this --

10           THE COURT:  Well, I think juries probably

11      can't figure that out, to tell you the truth.

12           MR. WHITE:  So they have confusion about which

13      it is.  So how much weight did that really carry

14      with them that it was described as an armed

15      robbery?

16           THE COURT:  I guess I have to figure that out

17      myself.

18           MR. WHITE:  I understand.

19           MS. DAVIS:  Judge, additionally in the Merck

20      case, they presented --

21           THE COURT:  Isn't that the one?

22           MS. DAVIS:  Yes, sir.  And they presented

23      dramatic testimony --

24           THE COURT:  Of the woman, I'm abreast of that.

25           MS. DAVIS:  -- concerning the North Carolina
```

001490

1        shooting.

2             THE COURT:  She opened the door, he shot her

3        but didn't kill her.

4             MS. DAVIS:  Right.  But they presented

5        dramatic testimony of that.

6             I also wanted to point out --

7             THE COURT:  Yeah, but there were six other

8        aggravators.  Weren't there six?

9             MR. WHITE:  But maybe that's the only one

10       where they heard that dramatic testimony.

11            THE COURT:  Well, I'm sure it was.  There were

12       six armed robberies, though.  Basically they lost

13       one aggravator, albeit it was dramatic.

14            MR. WHITE:  We applaud you if you, with us,

15       are confused somewhat about that.

16            THE COURT:  Because there's other cases that

17       kind of go the other way, too.

18            MS. DAVIS:  Judge, there's one other thing I

19       want to point out.  If this case came back, the

20       state could seek other sentence of imprisonment.

21            THE COURT:  Say that again.

22            MS. DAVIS:  The state could seek other

23       sentence of imprisonment.

24            MR. WHITE:  As an aggravator.

25            MS. DAVIS:  As an aggravating circumstance if

1    this came back at the time, which didn't exist in

2    1985.

3         THE COURT:  What's the name of it?  What are

4    you calling it?

5         MS. DAVIS:  Other sentence of imprisonment.

6         THE COURT:  Other sentence of imprisonment.  I

7    see.

8         MS. DAVIS:  One other thing is --

9         THE COURT:  So that would apply now?

10        MS. DAVIS:  He can correct me if I'm wrong.

11        THE COURT:  So that's come up since.  So

12   somehow that's --

13        MR. GRUBER:  I don't think that's true.

14        THE COURT:  Yeah.  How would that, wouldn't

15   the law at the time apply?  I don't know, but it

16   seems like it should.

17        MS. DAVIS:  Maybe that's not true.

18        The other case that we had cited in one of our

19   briefs was LeBron where this issue was pending

20   before the Florida Supreme Court, Jermaine LeBron,

21   whether that was a New York youthful offender

22   conviction.  Actually, he was 16 at the time.

23        That came back for resentencing but on a

24   different issue, and the court never said anything

25   about this.  If you look at the Jermaine LeBron

1   case, SC021956 is the Supreme Court number, they

2   gave a lot of instructions to the prosecutor about

3   what could and could not be presented at

4   resentencing, and they didn't say a word about the

5   youthful offender.

6        THE COURT:  Well, I've read all these cases on

7   the difference between a juvenile crime and the

8   youthful offender sentence.  I think it's pretty

9   clear in my head on that one.

10        Okay, anything else?  Mr. Gruber, rebuttal?

11        MR. GRUBER:  Real quick.  I wish the court

12   would reconsider its view on Merck.  I think the

13   case clearly says there must be a conviction, a

14   felony conviction before the prior violent felony

15   conviction aggravator can be used, and there was

16   not a conviction --

17        THE COURT:  As I remember it, it's in my head,

18   there's a ton of cases that differ with it in the

19   federal system that say that's not the case.

20        MR. GRUBER:  They're based on federal

21   sentencing guidelines --

22        THE COURT:  The legal argument is the same.  I

23   think the judge is correct on that.  I'll tell you

24   that, I think he was.  But I'm not so sure about

25   what Rompilla's impact is, though.

1    MR. GRUBER:  I just want to say, I disagree

2  with the court.

3    THE COURT:  I know you do.  Over here on this

4  side they agree with me, so I've got half of you.

5    MR. GRUBER:  Won't be the first time.

6    I appreciate being shown that transcript from

7  the penalty phase.  And a reading of section, I

8  believe it was from Officer Copper, to the effect

9  that he pled to a robbery, so I agree with that.

10    But my recollection of the facts are that

11  there was a presentence investigation ordered and

12  prepared.  It listed under Adult Section, armed

13  robbery convictions.  Under the Juvenile Section,

14  nothing.  And the sentencing court found as an

15  aggravating circumstance, in the written sentencing

16  order, that he was guilty of armed robbery.

17    My impression now, it's been some months --

18    THE COURT:  Years.

19    MR. GRUBER:  -- after having Mr. Parker on the

20  stand, he had no clue that the charge was pled down

21  to a lesser offense.

22    THE COURT:  I can't remember.  I thank you

23  all, very much.

24    MR. GRUBER:  One more quick one?

25    THE COURT:  Yes, sir.

001481

1          MR. GRUBER:  Mr. White's argument with regard

2     to prejudice with the pattern that if the file had

3     been found, that things would then have been

4     discovered.  Therefore, it's a matter of prejudice

5     alone on the speculative notion that if counsel had

6     done the investigation that that should be

7     rejected.  That's the same type of argument that

8     has been rejected now in --

9          THE COURT:  Every case.

10         MR. GRUBER:  -- Williamson in particular.

11         Also, in the course of doing so, it's likely

12    that they would have found that probation officer

13    up there who said what the court said, I don't

14    think the guy is guilty at all, and that he just

15    pled.  He had a prosecutor saying he can't make a

16    case.

17         THE COURT:  Yeah.

18         MR. GRUBER:  So all that would have been

19    available as well.

20         THE COURT:  Okay.  Thank you all, very much.

21         (Whereupon, these proceedings were concluded

22    at 12:00 p.m.)

23

24

25

001495

CERTIFICATE OF REPORTER


        I, LYNN DONNELLY, Court Reporter, do

hereby certify that I was authorized to

and did report the foregoing proceedings,

and that pages 1 through 38 are a true and

correct record of my stenographic notes.


        DATED this 24th day of December, 2005.


*Lynn Donnelly*

LYNN DONNELLY, Court Reporter

COUNTY/CIRCUIT COURT IN AND FOR
BREVARD COUNTY, FLORIDA

AFFIDAVIT
FOR ARREST WARRANT



STATE OF FLORIDA
COUNTY OF BREVARD

BEFORE ME, Judge of the Circuit Court, in and for Brevard County,
Florida, personally came AGENT SCOTT NYQUIST of the Brevard
County Sheriff's Office, who being first duly sworn, deposes and
says:  The Affiant is a citizen of said Brevard  County, State of
Flroida, and that he has reason to believe,  and does believe,
that MR. CROSLEY ALEXANDER GREEN, Black Male, 5'11",  170 pounds,
DOB:  09-11-57, has committed a violation of Florida Statutes
Sections 812.13, 787.01 and Chapter 782.04.   That the facts
tending  to establish  the grounds  for this  application  and
probably cause of Affiant believing that such facts  exist are as
follows:

The  investigation  has  revealed  that  on  April  3,  1989,  at
approximately  11:20  p.m.  victims  Charles  Flynn,  Junior
accompanied by  Kimberly Sue Hallock, (referred  to hereafter as
Flynn and Hallock) drove to a location located at Holder  Park on
Holder  Park  Road,' in  the  Mims,  Brevard County,  Florida area.
While at this location,  Hallock observed  a black  male approach
the left front of Flynn's vehicle.  Black male proceeded past the
driver's portion of the truck, stating that there was a Deputy in
the  area  and  to  be  careful.   Black male proceeded past the
driver's side of the truck.  Shortly thereafter,  Flynn indicated
that he  had to  use the  bathroom, as  Flynn exited the driver's
side of the vehicle, he was confronted by  a black  male suspect,
with  a  firearm.   Hallock  described the black male suspect as
approximately 5 feet 10 inches, approximately mid   to late 20's,
muscular  build,  wearing  a  heavy jacket possibly dark green or
dull green in color, blue  jeans,  dark  tee-shirt,  and  possibly
some type  of work  boots.   Hallock further describes black male
suspect as having bad body odor and no  facial hair.  Upon being
confronted by  black  male  suspect,  Hallock indicated that she
heard Flynn state "Wait a minute,  hold  on."   Hallock further
indicated that she observed black male suspect pointing a handgun
at Flynn.  Hallock related that the black male suspect instructed
Flynn to  get down  on the  ground.  Hallock further related that
Flynn went down to his knees  and was  further instructed  to get
down on the ground, however, Flynn refused.  Hallock recalled the
black  male  suspect asking Flynn,  "Where's your  money man?"
Hallock stated  that the black male suspect started calling Flynn
a crack head or possibly a cracker head.  Flynn  indicated to the
black male  suspect that  he didn't  have his wallet.  Flynn also
told the  black  male  suspect  just  to  let  her  go.   Hallock
indicated that the black male suspect replied, "I'm going to, I'm
going to let you both go, all I want is the truck and the money."

001487

Hallock further indicated that she gave the black male suspect five dollars ($5.00) in U. S. currency from her purse. Hallock related at this point that the black male asked her for a shoe. Hallock indicated that she gave the black male suspect a shoe at which point the black male threw the shoe back at her, indicating that he wanted the lace taken out. Hallock then removed the lace and handed it to the black male suspect. At this point, the black male suspect tied Flynn's hands behind his back, while doing so Hallock indicated that there was an accidental discharge of the firearm from the black male suspect. After tying Flynn's hands behind his back, Hallock stated that the black male suspect located Flynn's wallet, at which time he opened the wallet, observing some cash from within. Hallock stated that the black male suspect threw the wallet at her and instructed her to count the money at which time she did. Hallock related that she counted approximately one hundred and eighty-five dollars ($185.00) in U. S. currency and handed the cash back to the black male suspect. Hallock does not recall whether she handed the wallet back to the black male suspect or how the wallet was found on the sand outside the truck. Hallock stated that as the black male suspect was tying Flynn's hands, she removed from the glove box of Flynn's vehicle a small handgun which Flynn kept inside a holster. Hallock further stated that she removed Flynn's handgun, unsnapped the holster, and placed the handgun with the holster behind a pair of Flynn's work jeans located in the front passenger's side of the truck. At this point Hallock further indicated that she observed Flynn mouthing the words, "Get the gun." Hallock indicated that she then asked the black male suspect if she could get out of the truck, at which time she indicated that the black male suspect said yes. Hallock stated that as she got out of the truck on the driver's side, the black male suspect then instructed both of them to get back inside the truck. As they got back inside the truck, Flynn entered the truck first, locating himself on the far right passenger's side, next to the right front passenger door, with Hallock getting back in the truck, sitting in the middle with the black male suspect in the driver's seat. Hallock indicated that the black male suspect appeared very nervous during this confrontation. Hallock stated that during this initial confrontation the black male suspect was holding the gun with his right hand.

Hallock indicated that the black male suspect drove Flynn's truck, further instructing Flynn and Hallock to put their heads down as the black male suspect drove. Hallock indicated that it appeared that they rode in the truck for approximately 10 minutes before the truck came to rest at the second location, which was identified as Hammock Road, east of Hammock Road, in the orange groves. Hallock related that upon stopping, the black male grabbed her, and told her to go with him. The black male then exited the driver's side of the truck, pulling Hallock with him. Hallock further indicated that as she was coming out of the truck, the black male suspect attempted to shut the door, which was stopped by Flynn's foot. Hallock stated at this point she was able to break away from the black male suspect and fled

around to the passenger's side of the truck. Hallock further indicated that as she tried to enter the passenger's side of the truck, she was grabbed by the black male suspect and pulled back, falling to her knees at the right rear tire of Flynn's truck. Hallock stated at this point that she was on her knees in a squatting position near the right rear tire, with the black male suspect's left arm around her holding the gun to her head. Hallock stated that Flynn, who had the right passenger's door open, was leaning out and at which time Flynn fired one shot at the black male suspect. Hallock further indicated that after the shot, the black male suspect let go of her, and stepped back making a noise which she could not recall. At this point, Hallock stated that Flynn fell head first from the truck to the ground, at which time she ran and got in the right passenger's seat of the truck, shutting and locking the door. Hallock stated that at this time there was an exchange of gun fire, approximately 4 to 5 rounds. Hallock indicated that she could not recall how many times Flynn or the black male suspect shot. Hallock stated that after the shots were fired, she heard what she believed to be from Flynn, "To go." Hallock stated that she then started Flynn's truck and departed the area. Hallock further stated that she did not see the suspect again and did not hear any more shots after this point. Hallock then fled the scene in Flynn's truck and drove to a friend's house where she summoned help.

Shortly thereafter, Hallock escorted deputies back to the scene located east of Hammock Road in the orange groves where Flynn was found shot. Upon the deputies arrival, Flynn's hands were still bound. Flynn was then transported by ambulance to Jess Parrish Hospital in Titusville, where he expired as the result of a gun shot wound.

On April 4, 1989, Chief Medical Examiner Dr. Dennis Wickham performed an autopsy on Flynn, revealing the cause of death as a single gun shot wound to the chest. Dr. Wickham further removed a .22 caliber projectile from Flynn's body.

The crime scene search of Holder Park area revealed the wallet of Flynn and numerous footprints in the sand which were lifted by Criminalistic agents. That Deputy O'Dell Kiser Jr. I.D. #240 of the Brevard County Sheriff's Office, K-9 Unit was called to the scene at Holder Park. Deputy Kiser utilizes a German tracking dog named Czar, I. D. # 9-240. That said deputy has been employed by the Brevard County Sheriff's Office since 1976, and that he has utilized the dog, Czar, since June of 1985. That Czar has successfully completed a 14 week tracking school with Deputy Kiser at the Mid Florida Technical State Accredited K-9 Program, that both Kiser and Czar train two times per month and that they have been re-certified by Florida Police Standards in September 1988. That Czar is 8.5 years of age, and that he has been raised in the areas of tracking scent and has completed many such tracks resulting in many arrests. Czar was trained in Germany where bred, and had achieved a Shutzhund III F. H.

International Accreditation which encompasses attack, tracking and obedience work and has completed successfully on an international level.     Canine Deputy Kiser ~~was able to track~~ a ~~scent to a residence which was identified as~~ 3658 Braircliff Way in Mims, Brevard County, Florida.

The crime scene search of Hammock Road area revealed clothing identified as Flynn's, several blood spots on the ground, and a small .22 caliber handgun, identified as that belonging to Flynn. Further retrieved from the Hammock crime scene was a .22 caliber projectile which was located embedded in the ground in the area of the blood spots.

Flynn's truck was secured and taken into custody by the Sheriff's Office, the vehicle being located at 1410 Dixie Avenue, Lot 33, the Oak Park Trailer Park located in Titusville, Florida where it was driven and left by Hallock.  This being the residence that she drove to summon help.

1.  That on April 4, 1989, upon completion of a police artist sketch, that said sketch was shown to a confidential source of information by Sergeant E. Stamp of the Brevard County Sheriff's Office.  This Confidential Informant has proven reliable in the past and has been used by Sergeant Stamp repeatedly.  The Confidential Informant advised that the sketch was the likeness of "Papa" Green and alias for Crosley Alexander Green.

2.  That on April 4, 1989, Detective J. Fickey of the Titusville Police Department contacted Agent S. Nyquist of the Brevard County Sheriff's Office, Homicide Squad and advised that a Confidential Informant proven reliable in the past had advised him that the subject responsible for the murder in Titusville was currently at the residence of Colleen Brothers at the "Projects on Palmetto" in Mims.  That the subject was a black male named either "Crosley or Crosby"
3.      That upon receipt of this information that Agent S. Nyquist and other members of the Brevard County Sheriff's Office responded to said residence and met with Colleen Brothers who stated that the man who had been visiting her was "Papa" Green an alias Crosley Alexander Green.     Brothers viewed the artist sketch made by the surviving witness, and stated that it resembled Crosley Alexander "Papa" Green.

4.    That on April 4, 1989, Preacher Zeckle Britt, a long-time resident and businessman of Titusville stated to Sergeant R. Walden of the Brevard County Sheriff's Office, that the artist sketch, made by the surviving witness, was a likeness of Crosley Alexander "Papa" Green, who resides with his sister, Celestine Peterkin at 3658 Briarcliff Way, Mims, Florida and that Green had recently been released from prison.

5.     That on April 5, 1989, Agent J. Holloway of the Brevard County Sheriff's Office, Homicide Squad, received information from Dale Carlile, a long-time Brevard County resident, that on

the night of the murder, at approximately 6 p.m., that he was present at the Holder Park to watch a baseball game and that while present he observed and spoke to Crosley Alexander "Papa" Green, with whom he went to high school. Green was wearing an Army type field jacket, dark colored tee-shirt, jeans, and tan dessert type shoes. The subject was clean shaven during this contact. Green confirmed to Carlile that his nickname was "Papa."

6. That on April 5, 1989, that a student of a local high school contacted Agent J. Holloway of the Brevard County Sheriff's Office, Homicide Squad, and arrived for an interview with his mother. The student stated that he had been advised by another student who is black, that she knew who had done the murder, and that the subject had recently been released from prison.

7. That on April 5, 1989, that Inspector D. Wilmer of the Brevard County Sheriff's Office received an anonymous phone call which stated the caller had overheard a conversation of two co-workers which revealed the killer had recently been released from prison.

8. That on April 4, 1989, Agent J. Copenhaver of the Brevard County Sheriff's Office had been present at the residence of Colleen Brothers and had observed a subject that he believed to be Crosley Alexander "Papa" Green in the area of her residence. Agent Copenhaver has known Green for one year.

9. That on April 5, 1989, Inspector J. D. Wilmer of the Brevard County Sheriff's Office received information from a reliable source of information that he had conversed with a longtime friend who stated to him that the killer was "Papa" Green, the he had been staying at his sister's house located in the area of Holder Park. That during the course of the shootout which occurred immediately prior to the death of Charles Flynn, that said victim shot Green making him mad. He, therefore, shot Flynn to death because he (Green) was mad.

10. That on April 5, 1989, Deputy Frank Hickman of the Brevard County Sheriff's Office contacted Sergeant T. M. Fair of the Brevard County Sheriff's Office, Homicide Squad, and stated that numerous person had contacted a friend, Timothy Curtis, a long-time Brevard County resident and businessman about the murder. Curtis had stated to the deputy that the killer was Crosley Alexander "Papa" green, the artist sketch looked like Papa Green, who he has known for several years, and that he last was Green Approximately three weeks past in front of 3858 Briarcliff Way, which is known to be Green's sister's residence and is immediately adjacent to Holder Park where the crime originated.

11. That on April 5, 1989, that Detective Bolinger of the Titusville Police Department responded to the Brevard County Sheriff's Office Homicide Offices and stated that a confidential source, proven reliable in the past had contacted him advising

that the killer was Papa Green and that he had been at his
sister's house near Holder Park during the night of April 3, 4,
1989 and that Green had walked to Holder Park and committed the
crimes which involved the death of the victim.

12.   That on April 5, 1989, Sergeant Butch Stamp of the Brevard
County Sheriff's Office had been contacted by a confidential
source, proven reliable in the past, who indicated that the
killer was "Papa" Green, that the weapon involved in the shooting
was for sale, that Green had been wearing an Army type jacket,
jeans, and that the killing occurred after the ball game and that
Green had money that night after the killing.

13.   On april 5, 1989, a December 1988 photo of Crosley Alexander
Green was obtained from the Department of Corrections and placed
in a photographic line-up consisting of himself and five other
Black males. Prior to this, Hallock viewed approximately 50
photographs of black males of various physical descriptions,
none of which are Crosley Alexander Green, all of which she
eliminated..   The six photographs which comprised the line-up
were not previously shown to Hallock. Upon viewing the line-up,
Hallock identified photograph number two (which was Crosley
Alexander Green) as being the person who committed the crimes as
previously described herein.

WHEREOF, Affiant makes this Affidavit and prays for issuance of
an Arrest Warrant in due form of the law for the arerst of
CROSLEY ALEXANDER GREEN for the offenses of 1) Robbery 2)
Kidnapping 3) Murder, thereof, subject to the order of this
Honorable Court, by duly constituted officers of the law.

_____
AFFIANT

Sworn to and subscribed before me this _____6ᵗᵉ_____ day of
_____ A. D. 1989.

_____
Judge of the County Circuit Court
in and for Brevard County, Florida.

001492

89-4942-CFA

STATE OF FLORIDA

vs                                          <u>WARRANT FOR ARREST</u>

CROSLEY ALEXANDER GREEN

IN THE NAME OF THE STATE OF FLORIDA

TO ALL and singular the Sheriffs of this State,

You are commanded to arrest CROSLEY ALEXANDER GREEN, which is a
Black Male, 5'11', 170 pounds, DOB: 09-11-57, whom is reasonably
believed, from the attached affidavit, to have committed in
Brevard County, Florida, the offenses of 1) Robbery 2) Kidnapping
3) Murder (a copy of which is attached hereto and made a part
hereof) contrary to Sections 812.13, 787.01 and Chapter 782.04 of
the Florida Statutes and against the peace and dignity of the
State of Florida.

Given under my hand and seal on this ____6th____ day of _April_
A.D., 1989, at Brevard County, Florida.

_____
JUDGE OF THE COUNTY/CIRCUIT COURT

RETURN

I received this Warrant for arrest on _____and
arrested CROSLEY ALEXANDER GREEN by informing him that a Warrant
for 1) Robbery 2) Kidnapping 3) Murder had been issued for his
arrest and thereafter served a true copy of this Warrant on
CROSLEY ALEXANDER GREEN on _____.

_____
DEPUTY SHERIFF

County of_____



001493

3

CIRCUIT/COUNTY COURT IN AND FOR
BREVARD COUNTY, FLORIDA

#89-4942 CFA
Crossley Green

AFFIDAVIT
FOR SEARCH WARRANT

State of Florida
County of Brevard

BEFORE ME, Judge of the Circuit/County Court in and for Brevard County, Florida personally came Agent Scott Nyquist of the Brevard County Sheriff's Office who being first duly sworn, deposes and says: That Affiant is a citizen and resident of said Brevard County, State of Florida, and that he has reason to believe and does believe that those certain premises or curtilage thereof, located in Brevard County, Florida, described as follows, to wit:

Beginning at the intersection of Parrish Road and Old Dixie Highway, proceed west on Parrish Road, for a distance of approximately seven tenths (0.7) of a mile until reaching Glendale Boulevard, turn north on Glendale Boulevard for a distance of approximately one tenth (0.1) of a mile to the intersection of Briarcliff Way and Glendale Boulevard. From this intersection, proceed west on Briarcliff Way, the eighth (8th) house on the north side of Briarcliff Way is the residence of 3658 Briarcliff Way, Mims, Brevard County, Florida. The residence is described as a single story concrete block construction, tan in color with red shutters, red roof trim, and red shingles. There is a red and white brick veneer approximately four (4) feet under the front windows. This residence has tall shrubbery surrounding the driveway and the northwest side of the residence. Attached to the residence is a single car garage. Affiant further states that the above described premises are now being occupied by or under the control of David U. and Selestine J. Peterkin or Crosley A. Green as verified through the City Directory, and sworn statements of witnesses and there is now being kept on or in said premises or curtilage thereof certain items, to wit: Any handgun or handgun type weapon capable of firing a .22 caliber projectile, any and all .22 caliber ammunition, any pale to dark green jacket, long sleeved overshirt which my resemble a military issue fatigue or field jacket, any and all blue jeans, and all dark colored tee shirt or pull over shirts, any and all work type boots, adult sized 8 to 11, any and all clothing with apparent bloodstains and or holes consistent with small caliber projectile holes, any currency which may exhibit blood type stains, and all bandages, dressings or other related items consistent with or used for the treatment of gunshot type wounds, any and all other microscopic or trace related evidence related to the robbery, kidnapping, and murder of Charles Flynn, Junior and Kimberly Hallock, having been used or now being kept in said premises in violation of the laws of the State of Florida to wit: Robbery sections 812.13, Florida



Statutes, Kidnapping section 787.01, Florida Statutes, Murder, Section 782.04, Florida Statutes.
That the facts tending to establish the grounds for this application and the probable cause of Affiant believing that such facts exist are as follows:

The investigation has revealed that on April 3, 1989, at approximately 11:20 p.m. victims Charles Flynn, Junior accompanied by Kimberly Sue Hallock, (referred to hereafter as Flynn and Hallock) drove to a location located at Holder Park on Holder Park Road, in the Mims, Brevard County, Florida area. While at this location, Hallock observed a black male approach the left front of Flynn's vehicle. Black male proceeded past the driver's portion of the truck, stating that there was a Deputy in the area and to be careful. Black male proceeded past the driver's side of the truck. Shortly thereafter, Flynn indicated that he had to use the bathroom, as Flynn exited the driver's side of the vehicle, he was confronted by a black male suspect, with a firearm. Hallock described the black male suspect as approximately 5 feet 10 inches, approximately mid to late 20's, muscular build, wearing a heavy jacket possibly dark green or dull green in color, blue jeans, dark tee-shirt, and possibly some type of work boots. Hallock further describes black male suspect as having bad body odor and no facial hair. Upon being confronted by black male suspect, Hallock indicated that she heard Flynn state "Wait a minute, hold on." Hallock further indicated that she observed black male suspect pointing a handgun at Flynn. Hallock related that the black male suspect instructed Flynn to get down on the ground. Hallock further related that Flynn went down to his knees and was further instructed to get down on the ground, however, Flynn refused. Hallock recalled the black male suspect asking Flynn, "Where's your money man?" Hallock stated that the black male suspect started calling Flynn a crack head or possibly a cracker head. Flynn indicated to the black male suspect that he didn't have his wallet. Flynn also told the black male suspect just to let her go. Hallock indicated that the black male suspect replied, "I'm going to, I'm going to let you both go, all I want is the truck and the money." Hallock further indicated that she gave the black male suspect five dollars ($5.00) in U. S. currency from her purse. Hallock related at this point that the black male asked her for a shoe. Hallock indicated that she gave the black male suspect a shoe at which point the black male threw the shoe back at her, indicating that he wanted the lace taken out. Hallock then removed the lace and handed it to the black male suspect. At this point, the black male suspect tied Flynn's hands behind his back, while doing so Hallock indicated that there was an accidental discharge of the firearm from the black male suspect. After tying Flynn's hands behind his back, Hallock stated that the black male suspect located Flynn's wallet, at which time he opened the wallet, observing some cash from within. Hallock stated that the black male suspect threw the wallet at her and instructed her to count the money at which time she did. Hallock related that she counted approximately one hundred and eighty-five dollars

($185.00) in U. S. currency and handed the cash back to the black male suspect. Hallock does not recall whether she handed the wallet back to the black male suspect or how the wallet was found on the sand outside the truck. Hallock stated that as the black male suspect was tying Flynn's hands, she removed from the glove box of Flynn's vehicle a small handgun which Flynn kept inside a holster. Hallock further stated that she removed Flynn's handgun, unsnapped the holster, and placed the handgun with the holster behind a pair of Flynn's work jeans located in the front passenger's side of the truck. At this point Hallock further indicated that she observed Flynn mouthing the words, "Get the gun." Hallock indicated that she then asked the black male suspect if she could get out of the truck, at which time she indicated that the black male suspect said yes. Hallock stated that as she got out of the truck on the driver's side, the black male suspect then instructed both of them to get back inside the truck. As they got back inside the truck, Flynn entered the truck first, locating himself on the far right passenger's side, next to the right front passenger door, with Hallock getting back in the truck, sitting in the middle with the black male suspect in the driver's seat. Hallock indicated that the black male suspect appeared very nervous during this confrontation. Hallock stated that during this initial confrontation the black male suspect was holding the gun with his right hand.

Hallock indicated that the black male suspect drove Flynn's truck, further instructing Flynn and Hallock to put their heads down as the black male suspect drove. Hallock indicated that it appeared that they rode in the truck for approximately 10 minutes before the truck came to rest at the second location, which was identified as Hammock Road, east of Hammock Road, in the orange groves. Hallock related that upon stopping, the black male grabbed her, and told her to go with him. The black male then exited the driver's side of the truck, pulling Hallock with him. Hallock further indicated that as she was coming out of the truck, the black male suspect attempted to shut the door, which was stopped by Flynn's foot. Hallock stated at this point she was able to break away from the black male suspect and fled around to the passenger's side of the truck. Hallock further indicated that as she tried to enter the passenger's side of the truck, she was grabbed by the black male suspect and pulled back, falling to her knees at the right rear tire of Flynn's truck. Hallock stated at this point that she was on her knees in a squatting position near the right rear tire, with the black male suspect's left arm around her holding the gun to her head. Hallock stated that Flynn, who had the right passenger's door open, was leaning out and at which time Flynn fired one shot at the black male suspect. Hallock further indicated that after the shot, the black male suspect let go of her, and stepped back making a noise which she could not recall. At this point, Hallock stated that Flynn fell head first from the truck to the ground, at which time she ran and got in the right passenger's seat of the truck, shutting and locking the door. Hallock stated that at this time there was an exchange of gun fire,

was driven and left by Hallock.   This being the residence that she drove to summon help.

1.   That on April 4, 1989, upon completion of a police artist sketch, that said sketch was shown to a confidential source of information by Sergeant E. Stamp of the Brevard County Sheriff's Office.   This Confidential Informant has proven reliable in the past and has been used by Sergeant Stamp repeatedly.   The Confidential Informant advised that the sketch was the likeness of "Papa" Green and alias for Crosley Alexander Green.

2.   That on April 4, 1989, Detective J. Fickey of the Titusville Police Department contacted Agent S. Nyquist of the Brevard County Sheriff's Office, Homicide Squad and advised that a Confidential Informant proven reliable in the past had advised him that the subject responsible for the murder in Titusville was currently at the residence of Colleen Brothers at the "Projects on Palmetto" in Mims.   That the subject was a black male named either "Crosley or Crosby"

3.   That upon receipt of this information that Agent S. Nyquist and other members of the Brevard County Sheriff's Office responded to said residence and met with Colleen Brothers who stated that the man who had been visiting her was "Papa" Green an alias Crosley Alexander Green.   Brothers viewed the artist sketch made by the surviving witness, and stated that it resembled Crosley Alexander "Papa" Green.

4.   That on April 4, 1989, Preacher Zeckle Britt, a long-time resident and businessman of Titusville stated to Sergeant R. Walden of the Brevard County Sheriff's Office, that the artist sketch, made by the surviving witness, was a likeness of Crosley Alexander "Papa" Green, who resides with his sister, Celestine Peterkin at 3658 Briarcliff Way, Mims, Florida and that Green had recently been released from prison.

5.   That on April 5, 1989, Agent J. Holloway of the Brevard County Sheriff's Office, Homicide Squad, received information from Dale Carlile, a long-time Brevard County resident, that on the night of the murder, at approximately 6 p.m., that he was present at the Holder Park to watch a baseball game and that while present he observed and spoke to Crosley Alexander "Papa" Green, with whom he went to high school.   Green was wearing an Army type field jacket, dark colored tee-shirt, jeans, and tan dessert type shoes.   The subject was clean shaven during this contact.   Green confirmed to Carlile that his nickname was "Papa."

6.   That on April 5, 1989, that a student of a local high school contacted Agent J. Holloway of the Brevard County Sheriff's Office, Homicide Squad, and arrived for an interview with his mother.   The student stated that he had been advised by another student who is black, that she knew who had done the murder, and that the subject had recently been released from prison.

7.   That on April 5, 1989, that Inspector D. Wilmer of the Brevard County Sheriff's Office received an anonymous phone call which stated the caller had overheard a conversation of two co-workers which revealed the killer had recently been released from prison.

8.   That on April 4, 1989, Agent J. Copenhaver of the Brevard County Sheriff's Office had been present at the residence of Colleen Brothers and had observed a subject that he believed to be Crosley Alexander "Papa" Green in the area of her residence. Agent Copenhaver has known Green for one year.

9.   That on April 5, 1989, Inspector J. D. Wilmer of the Brevard County Sheriff's Office received information from a reliable source of information that he had conversed with a longtime friend who stated to him that the killer was "Papa" Green, the he had been staying at his sister's house located in the area of Holder Park.   That during the course of the shootout which occurred immediately prior to the death of Charles Flynn, that said victim shot Green making him mad.  He, therefore, shot Flynn to death because he (Green) was mad.

10.   That on April 5, 1989, Deputy Frank Hickman of the Brevard County Sheriff's Office contacted Sergeant T. M. Fair of the Brevard County Sheriff's Office, Homicide Squad,  and stated that numerous person  had contacted  a friend, Timothy Curtis, a long-time Brevard County resident and businessman about the murder. Curtis had stated to the deputy that the killer was Crosley Alexander "Papa" green, the artist sketch looked like Papa Green, who he has known for several years, and that he last was Green Approximately three weeks past in front of  3858 Briarcliff Way, which is known to be Green's sister's residence and is immediately adjacent to Holder Park where the crime originated.

11.   That on April 5, 1989, that Detective Bolinger of the Titusville Police Department responded to the Brevard County Sheriff's Office Homicide Offices and stated that a confidential source, proven reliable in the past had contacted him advising that the killer was Papa Green and that he had been at his sister's house near Holder Park during the night of April 3, 4, 1989 and that Green had walked to Holder Park and committed the crimes which involved the death of the victim.

12.   That on April 5, 1989, Sergeant Butch Stamp of the Brevard County Sheriff's Office had been contacted by a confidential source, proven reliable in the past, who indicated that the killer was "Papa" Green, that the weapon involved in the shooting was for sale, that Green had been wearing an Army type jacket, jeans, and that the killing occurred after the ball game and that Green had money that night after the killing.

13.  On april 5, 1989, a December 1988 photo of Crosley Alexander Green was obtained from the Department of Corrections  and placed in a  photographic line-up  consisting of  himself and five other

approximately 4 to 5 rounds.   Hallock indicated that she could
not recall how many times Flynn or the  black male  suspect shot.
Hallock stated   that after  the shots  were fired, she heard what
she believed to be from Flynn, "To go."  Hallock  stated that she
then  started  Flynn's  truck  and  departed  the  area.  Hallock
further stated that she did not see the suspect again and did not
hear  any  more  shots  after  this  point.  Hallock  then  fled the
scene in Flynn's truck and drove  to a  friend's house  where she
summoned help.

Shortly thereafter,  Hallock  escorted  deputies back  to  the scene
located east of Hammock Road in the orange groves where Flynn was
found shot.   Upon the deputies arrival, Flynn's hands were still
bound.  Flynn was then transported  by ambulance  to Jess Parrish
Hospital in  Titusville, where  he expired as the result of a gun
shot wound.

On April 4,  1989, Chief  Medical  Examiner  Dr.  Dennis Wickham
performed an  autopsy on Flynn, revealing the cause of death as a
single gun shot wound to the chest.  Dr. Wickham  further removed
a .22 caliber projectile from Flynn's body.

The crime scene search of Holder Park area revealed the wallet of
Flynn and numerous footprints  in the  sand which  were lifted by
Criminalistic agents.    That Deputy O'Dell Kiser Jr. I.D. #240 of
the Brevard County Sheriff's Office, K-9  Unit was  called to the
scene at  Holder Park.   Deputy  Kiser utilizes a German tracking
dog named Czar, I. D.  # 9-240.    That said deputy has been
employed by  the Brevard  County Sheriff's Office since 1976, and
that he has utilized  the dog, Czar, since  June of  1985.  That
Czar has  successfully completed  a 14  week tracking school with
Deputy Kiser at the  Mid Florida  Technical State  Accredited K-9
Program, that  both Kiser  and Czar train two times per month and
that they have been re-certified by  Florida Police  Standards in
September 1988.   That  Czar is 8.5 years of age, and that he has
been raised in the areas of tracking scent and has completed many
such  tracks  resulting  in  many  arrests.   Czar was trained in
Germany where bred,  and  had  achieved  a  Shutzhund  III  F. H.
International  Accreditation  which  encompasses attack, tracking
and  obedience  work  and  has  completed  successfully  on  an
international level.    Canine Deputy Kiser was  able  to  track  a
scent  to  a  residence  which  was  identified  as  3658  Braircliff Way
in Mims, Brevard County, Florida.

The  crime  scene  search  of Hammock Road area revealed clothing
identified as Flynn's, several blood spots  on the  ground, and a
small .22 caliber handgun, identified as that belonging to Flynn.
Further retrieved from the Hammock crime scene was  a .22 caliber
projectile which  was located  embedded in the ground in the area
of the blood spots.

Flynn's truck was secured and taken into custody by the Sheriff's
Office, the  vehicle being  located at 1410 Dixie Avenue, Lot 33,
the Oak Park Trailer Park located in Titusville, Florida where it

Black males.  Prior to this, Hallock viewed approximately 50
photographs of black males of various physical descriptions,
none of which are Crosley Alexander Green, all of which she
eliminated.. The six photographs which comprised the line-up
were not previously shown to Hallock.  Upon viewing the line-up,
Hallock identified photograph number two (which was Crosley
Alexander Green) as being the person who committed the crimes as
previously described herein.

The Affiant, Agent Scott Nyquist, has been in continuous law
enforcement service for a period of approxiamtely 9 and a half
years.  Your Affiant is presently employed as a Deputy Sheriff
with the Brevard County Sheriff's Office, currently assigned to
the Homicide Division.  Your Affiant has extensive experience in
criminal investigations.  Your affiant's law enforcement training
consisted of the Florida Police Standards Course of 240 hours as
well as numerous other courses and seminars pertaining to
narcotics and death investigations.  Your Affiant was initially
assigned to the road patrol unit of the Brevard County Sheriff's
Department for a period of two years and was subsequently
assigned to Brevard County Sheriff's Office Drug Unit for 6
years.  During this 6 year period, your Affiant was assigned to
the United States Department of Justice, Drug Enforcement
Administration for a period of two years.  Your Affiant was
previously assigned to the Brevard County Sheriff's Office
Homicide Division for a period of one year.

Affiant therefore requests that a search warrant be issued and a
search made of said premises, and the curtilage thereof, and any
persons contained within said premises or curtilage thereof, for
the aforementioned: any handgun or handgun type weapon capable
of firing a .22 caliber projectile, any and all .22 caliber
ammunition, any pale to dark green jacket, long sleeved overshirt
which my resemble a military issue fatigue or field jacket, any
and all blue jeans, and all dark colored tee shirt or pull over
shirts, any and all work type boots, adult sized 8 to 11, any and
all clothing with apparent bloodstains and or holes consistent
with small caliber projectile holes, any currency which may
exhibit blood type stains, and all bandages, dressings, or other
related items consistent with or used for the treatment of gun
shot type wounds, any and all other microscopic or trace related
evidence related to the robbery, kidnapping, and murder of
Charles Flynn, Junior and Kimberly Hallock, having been used or
now being kept in said premises in violation of the laws of the
State of Florida to wit:  Robbery sections 812.13, Florida
Statutes, Kidnapping section 787.01, Florida Statutes.

Affiant requests the day time or night time service of said
warrant.  Night time service is requested to protect initial
concealment of approaching officers and to facilitate entry into
the premises and to prevent the concealment and/or destruction by
subjects within the premises.

Whereas, Affiant makes this Affidavit and prays the issuance of a Search Warrant in due form of law for the search of the above described PREMISES and the curtilage thereof and all persons located therein for the above described property, and for the seizure and safe keeping thereof, subject to the order of this Honorable Court, by the duly constituted officers of the law.

_____
Affiant

Sworn to and subscribed before me this 6ᵗ day of April A.D. 1987

_____
Judge of the County Circuit Court in and for Brevard County, Florida.

8

001501

CIRCUIT/COUNTY COURT IN AND FOR
BREVARD COUNTY, FLORIDA

SEARCH WARRANT

IN THE NAME OF THE STATE OF FLORIDA,

TO:   THE SHERIFF OF BREVARD COUNTY, FLORIDA, OR HIS DEPUTIES AND
THE COMMISSIONER OF THE FLORIDA DEPARTMENT OF LAW  ENFORCEMENT OR
ANY OF HIS DULY CONSTITUTED AGENTS:

WHEREAS, Agent  Scott  Nyquist,  Brevard  County Sheriff's Office
has  this  day  made  affidavit  before  me,  Judge  of  the
Circuit/County  Court  in  and  for  Brevard  County, Florida and
filed with this Court  an Affidavit for Search  Warrant, alleging
that Affiant  has reason to believe and does believe that certain
PREMISES,  located  in  Brevard  County,  Florida,  described  as
follows, to-wit:

Beginning  at  the  intersection  of  Parrish  Road and Old Dixie
Highway,  proceed  west  on  Parrish  Road,  for  a  distance  of
approximately  seven  tenths  (0.7)  of  a  mile  until  reaching
Glendale  Boulevard,  turn  north  on  Glendale  Boulevard  for a
distance  of  approximately  one  tenth  (0.1)  of  a mile to the
intersection of Briarcliff Way and Glendale Boulevard.  From this
intersection,  proceed  west  on  Briarcliff Way,  the eighth (8th)
house on the north  side of  Briarcliff Way  is the  residence of
3658  Briarcliff  Way,  Mims,  Brevard  County,  Florida.    The
residence  is  described  as   a  single  story concrete  block
construction,  tan  in color with red shutters, red roof trim, and
red  shingles.   There  is  a  red  and  white  brick  veneer
approximately  four  (4)  feet  under  the  front  windows.  This
residence has tall shrubbery  surrounding  the  driveway  and the
northwest side  of  the  residence.  Attached  to the residence is a
single car garage.

The PREMISES  is occupied, or under the control of a David U. and
Selestine J. Peterkin or Crosley A. Green as verified through the
City Directory, and sworn  statements of  witnesses and  there is
now  being  kept  on  or  in said premises or curtilage thereof
certain items to wit:  Any handgun or handgun type weapon capable
of  firing  a  .22  caliber  projectile,  any and all .22 caliber
ammunition, any pale to dark green jacket, long sleeved overshirt
which may  resemble a military issue fatigue or field jacket, any
and all blue jeans, and all dark colored  tee shirt  or pull over
shirts, any and all work type boots, adult sized 8 to 11, any and
all clothing  with apparent  bloodstains and  or holes consistent
with  small  caliber  projectile  holes, any currency which may
exhibit blood type stains, and all  bandages, dressings  or other
related  items  consistent  with  or  used  for  the treatment of
gunshot type wounds, any and  all  other  microscopic  or trace
related evidence  related to  the robbery, kidnapping, and murder
of Charles Flynn, Junior and Kimberly Hallock, having  been used
or now  being kept  in said  premises in violation of the laws of

001502

the State of Florida to wit: Robbery sections 812.13, Florida Statutes, Kidnapping section 787.01, Florida Statutes.

The Court has interviewed the Affiant and it appears that he is a responsible and reputable person, employed as a law enforcement officer as set forth above. The Court has considered the Affidavit and is satisfied as to the existence of the facts as set forth therein, and finds that said facts do establish and constitute probable cause for the issuance of a Search Warrant for the above described premises.

NOW, THEREFORE, YOU, or either of you, are hereby commanded in the name of the State of Florida, in the DAYTIME or NIGHTTIME , to enter and search the said premises herein before described and the curtilage thereof and all persons located therein, or any part thereof, then you are authorized to seize and secure the same and to arrest any person(s) within violating the law in connection therewith.

You are further commanded to prepare, at the time and place of seizure, a full and true list or inventory of all things seized, in duplicate, and which shall be signed by you. You shall deliver one duplicate copy of said inventory and a duplicate copy of this Warrant to the person in charge of said premises or in the absence of such person, to leave said duplicate copies on said premises.

You are further commanded forthwith to bring all property seized and any person arrested before the County/Circuit Court in and for Brevard County, Florida, to be dealt with according to law, and to make a return of said Warrant with a copy of the inventory duly attached thereto to said Court, properly verified by Affidavit according to law, within 10 days of the date of this Warrant.

ORDERED THIS 6th DAY OF _____April_____ A.D. 1989

_____
Judge, Circuit/County Court, in and for Brevard County, Florida.

001503

INV     RY AND RECEIPT OF PROPER     SEIZED
UNDER THE WITHIN SEARCH WARRANT

*AGT. SCOTT LYNQUIST*
Officer

This *6th* day of *April*       , A.D., 19*89*.

R E T U R N

STATE OF FLORIDA
COUNTY OF BREVARD

Received the within Search Warrant on the *6th* day of *April*       ,
A.D., 19*89*, and executed the same in Brevard County, Florida on the
*6th* day of *April*       , A.D., 19*89*, by searching the
(vehicle/premises) described herein and by taking into custody and
possession the following described property, to-wit:

*Refer To Attached Property Receipt*

And I further executed the said warrant by arresting   *NA*

and by delivering a duplicate copy of this warrant to *Celestine Peterkin*

and by making and delivering to the said *Celestine Peterkin*

a true inventory of the above described property.

*Scott Lynquist*
Officer

I, *SCOTT LYNQUIST*      , the officer by whom the foregoing warrant
was executed, do swear that the above inventory contains a true and
detailed account of all the property taken by me on said warrant.

*Scott Lynquist*

Sworn to and subscribed before me this *6th* day of *April*       , 19*89*

My Commission expires_____

Notary Public - State of Florida
at Large

001504

PAGE _____ OF _____

| BREVARD COUNTY SHERIFF'S DEPARTMENT<br>TITUSVILLE, FLORIDA 32780<br>PROPERTY/VEHICLE STORAGE RECEIPT | NOTICE: PROPERTY SEIZED AS EVIDENCE: UNLESS TURNED OVER TO AP-<br>PROPRIATE COURT WILL BE DISPOSED OF 60 DAYS FROM ACQUITTAL/DIS-<br>MISSAL DATE OF CASE, UNLESS CLAIMED BY OWNER. FOUND, STOLEN,<br>ABANDONED OR SAFEKEEPING PROPERTY, UNLESS CLAIMED BY OWNER<br>— WILL BE DISPOSED OF, 6 MONTHS AFTER RECEIPT BY THIS OFFICER. |

| MO. | DAY | YEAR | TIME: | ADDRESS FROM WHERE PROPERTY TAKEN: | CR NUMBER: |
|-----|-----|------|-------|-----------------------------------|------------|
| 4 | 6 | 89 | 073 | 3658 Briarcliff Way, Mims Fl. | 89-33497 |

☐ FOUND PROPERTY ☒ TRIAL EVIDENCE ☐ SAFEKEEPING ☐ CONFISCATED
☐ RECOVERED STOLEN ☐ LAB EVIDENCE ☐ PROPERTY OF DECEASED ☐ OTHER_____

| NAME: COMPL. ☒ VICT. ☐ | ADDRESS: 700 Park Ave. | PHONE: |
| Agt. D. Demers #57 | Titusville Fl. | HOME: 269-8933 |
| | | BUSINESS: |
| NAME: COMPL. ☐ VICT. ☐ | ADDRESS: | PHONE: |
| | | HOME: |
| | | BUSINESS: |

| ITEM | QUANTITY | PROPERTY DESCRIPTION (MODEL, MAKE, BRAND, TYPE, SIZE, COLOR, CALIBER, ETC.) | SERIAL OR V.I.N. NUMBER |
|------|----------|------------------------------------------------------------|--------------------------|
| | 1 | H&R .22 caliber Revolver | 130501 |
| | 1 | Raven .25 Auto | 1298821 |
| | 1 | Pair of white high to sneakers "Puma" | N/A |
| | 1 | Pair of dark colored sneakers | N/A |
| | 1 | Gray tank top shirt | N/A |
| | | | |
| | | | |
| | | | |
| | | | |

| SIGNATURE FROM WHOM PROPERTY TAKEN: | IMPOUNDING OFFICER/ID NO./DIVISION: |
| | X _Detective_ Patrol |

| RECEIVED BY/ID NO.: | REASON: | TIME: | MO. | DAY | YEAR |
| | | | | | |

## VEHICLE STORAGE/IMPOUND INFORMATION

| YEAR: | MAKE: | MODEL: | STYLE: | COLOR: | LICENSE NUMBER: | STATE: | YEAR OF LIC.: |
|-------|-------|--------|--------|--------|-----------------|--------|----------------|
| | | | | | | | |

| TIME: | DATE TOWED: | MILEAGE: | VEHICLE IDENTIFICATION NUMBER: |
| | MO. DAY YEAR | | |

LIST DAMAGE TO VEHICLE AND PARTS MISSING:

| REASON VEHICLE TOWED: | NAME OF WRECKER SERVICE: | LOCATION VEHICLE STORED: |
| | | |

☐ HOLD ☐ LAB EXAM ☐ LATENT PRINT | DEPUTY/AGENT WHO MAY AUTHORIZE VEHICLE'S RELEASE:
☐ RELEASE TO OWNER ☐ OTHER_____

| SIGNATURE TOW TRUCK OPERATOR: | OFFICER'S SIGNATURE/ID NO.: |
| | |

001505

SD-428 (Rev. 6/83)

**ARREST/NOTICE TO APPEAR**
**PROBABLE CAUSE AFFIDAVIT/**
**JUVENILE REFERRAL**

FCIC/NCIC CHECK YES ☑ NO ☐

OBTS Number

1. Arrest   4. Complaint Affidavit
2. Notice to Appear   5. Request for Copies
3. Arrest Affidavit   6. Juvenile Referral   Juvenile [ T ]

**ADMINISTRATIVE**

Agency ORI Number FLO   050000   Name BREVARD CO. SHERIFFS OFFICE

Agency Report Number   87-33497

Charge Type Check as many as apply:  ☑ 1. Felony  ☐ 3. Misdemeanor  ☐ 5. Ordinance
☐ 2. Traffic Felony  ☐ 4. Traffic Misdemeanor  ☐ 6. Other

Weapon Seized/Type  1. Yes  2. No ☑

Agency Arrest Number   37.75

Location of Arrest (Include Name of Business)   PALMETTO AVE E MIMS, FL

Location of Offense (Business Name, Address)   MIMS, FL

Date of Arrest   06.08.89   Time of Arrest   7/00   BCSO Date   BCSO Time   Jail Date   6-8-89   Jail Time   1325

Fingerprinted  ☐ Identification Only  ☐ Criminal   ☐ AFIS   By:

Date of Offense   01.04.89   FDLE Number   DOC Number   FBI Number

**DEFENDANT/JUVENILE**

Name (Last, First, Middle)   GREEN CROSLEY ALEXANDER   Alias   PAPPA

Race  W - White  I - American Indian  B - Black  O - Oriental/Asian   [ B ]   Sex   M   Date of Birth   09/11/57   Height   5'11"   Weight   170   Eye Color   BRO   Hair Color   BLK   Complexion   DRK MED   Build

Scars, Marks, Tattoos, Unique Physical Features (Location, Type, Description)   SCAR FOREHEAD

Indication of:  Alcohol Influence ☐ Y ☐ N  Drug Influence ☐ Y ☐ N

Local Address (Street, Apt. Number)   2688 BRIERCLIFF   (City)   MIMS   (State)   FL   (Zip)   Phone   NONE

Residence Status  1. City  3. Florida  2. County  4. Out of State

Permanent Address (Street, Apt. Number) or Parent's Name if Juv.   (City)   (State)   (Zip)   Phone

Parent Contacted  Y   N

Business Name (Name, Street or Parent's Address if Juv)   UNEMPLOYED   (City)   (State)   (Zip)   Phone

Occupation   GROVE WORKER

Driver's License State/Number   NONE   Social Security Number   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   INS Number   NONE   Place of Birth   MIMS, FL   Citizenship   USA

**CO-DEF.**

Co-Defendant Name (Last, First, Middle)   Race   Sex   Date of Birth or Age  ☐ 1. Arrested  ☐ 2. At Large   ☐ 3. Felony  ☐ 4. Misdemeanor  ☐ 5. Juvenile

Co-Defendant Name (Last, First, Middle)   Race   Sex   Date of Birth or Age  ☐ 1. Arrested  ☐ 2. At Large   ☐ 3. Felony  ☐ 4. Misdemeanor  ☐ 5. Juvenile

**CODE**

Activity  N. N/A  P. Possess   S. Sell  B. Buy  T. Traffic   R. Smuggle  O. Deliver  E. Use   K. Dispense/ Distribute   M. Manufacture/ Produce/ Cultivate   Z. Other

Type  N. N/A  A. Amphetamine   B. Barbiturate  C. Cocaine  E. Heroin   H. Hallucinogen  M. Marijuana  O. Opium/Deriv.   P. Paraphernalia/ Equipment  S. Synthetic   U. Unknown  Z. Other

**CHARGE**

Charge Description   MURDER

County  ☑ P.S.  ☐ Ord.   Statute Violation Number   782.04   Violation of Section (ORD)

Activity   Drug Type   Amount/Unit   NONE

Bond Amount   NONE   Court Number   89-4942CF

☐ PC  ☐ Copies  ☐ AC  ☐ BW  ☐ FW   WARRANT   ☐ PW  ☐ Juv. PU  ☐ Citation   Date Issued   4-6-89   ☐ Writ. Att.   ☐ Domestic Viol. Inj.   ☐ Order of Arrest

**CHARGE**

Charge Description   ARMED ROBBERY

Counts  ☑ P.S.  ☐ Ord.   Statute Violation Number   812.13   Violation of Section (ORD)

Activity   Drug Type   Amount/Unit   NONE

Bond Amount   NONE   Court Number   89-4942CF

☐ PC  ☐ Copies  ☐ AC  ☐ BW  ☐ FW   WARRANT   ☐ PW  ☐ Juv. PU  ☐ Citation   Date Issued   4-6-89   ☐ Writ. Att.   ☐ Domestic Viol. Inj.   ☐ Order of Arrest

**PROBABLE CAUSE STATEMENT**

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that the above named Defendant committed the following violation of law:

On the _____ day of _____ 19 _____ at _____ ☐ A.M. ☐ P.M.   (Specifically Include facts constituting cause for arrest.)

SEE ATTACHED WARRANT SIGNED BY JUDGE MOXLEY

FILED IN OFFICE
P.C. WINSTEAD, JR.
CLERK CT.
BREVARD CO., FLA.
'89 JUN 30 AM 9:30
D.C.

Continued for: Narrative ☐   Charges ☐

Defendant's Relationship to Victim:   P. C. Exists for Charge(s)   Judge's Signature   Date

**NOTICE TO APPEAR**

☐ Mandatory Appearance In Court   Location (Court, Room Number, Address)

☐ You need not appear in Court but must comply with instructions on Reverse Side   Time   Month   Day   Year   Time   ☐ A.M. ☐ P.M.

I AGREE TO APPEAR AT THE TIME AND PLACE DESIGNATED TO ANSWER THE OFFENSE CHARGED OR TO PAY THE FINE SUBSCRIBED. I UNDERSTAND THAT SHOULD I WILFULLY FAIL TO APPEAR BEFORE THE COURT AS REQUIRED BY THIS NOTICE TO APPEAR, THAT I MAY BE HELD IN CONTEMPT OF COURT AND A WARRANT FOR MY ARREST SHALL BE ISSUED.

Signature of Defendant/Juvenile's Parent or Custodian   Released to: (Name)   Date   Time

Juvenile Disposition
1. Handled/Processed Within Dept. and Released   2. Turned Over to HRS/CYF
3. Incarcerated (County Jail)
4. Information Only

**ADMINISTRATIVE**

☐ Miranda Warning   Hold for Other Agency   Name:   Verified By   Date   Bonding Agency:

Adults Only
☐ Hold for First Appearance
Do Not Bond Out   Reason:

I swear/affirm the above and reverse and attached statements are true and correct.

Officer's/Complainant's Signature   D.R.S. Bruce

Name (Printed)   S. Marsh   ID. No./Dist.   53 Homicide

Sworn to and subscribed before me, the undersigned authority this   8th day of June, 19 89   Signature   Notary/Low Enf. Officer in Perf of Official Duties

Bond #   Amount

Bond #

Returnable Court Date   001506   ☐ A.M. ☐ P.M.

Court Location   Page   of

CCC-L-923.01   ORIGINAL - Court File   YELLOW - Law Enforcement Agency   PINK - Defendant

FCIC/NCIC CHECK YES ☑ NO ☐

OBTS Number

**ARREST/NOTICE TO APPEAR**
**PROBABLE CAUSE AFFIDAVIT/**
**JUVENILE REFERRAL**

1. Arrest          4. Complaint Affidavit          Juvenile
2. Notice to Appear   5. Request for Copies
3. Arrest Affidavit   6. Juvenile Referral

Agency Report Number  89-33497

Agency Arrest Number  37795

| ADMINISTRATIVE | Agency ORI Number | BREVARD CO SHERIFF OFFICE | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | FLO | | | | | | | |
| | Charge Type Check as many as apply | ☑ 1. Felony ☐ 2. Traffic Felony | ☐ 3. Misdemeanor ☐ 4. Traffic Misdemeanor | ☐ 5. Ordinance ☐ 6. Other | Weapon Seized/Type 1. Yes ☑ 2. No ☐ | | | |
| | Location of Arrest (Include Name of Business) | | | | Location of Offense (Business Name, Address) | | | |
| | Date of Arrest 06.08.89 | Time of Arrest 1100 | BCSO Date | BCSO Time | Jail Date 6-8-89 | Jail Time 1325 | Fingerprinted ☐ Identification Only ☐ Criminal | By: ☐ AFIS |
| | Date of Offense 05.04.89 | FDLE Number | | DOC Number | | | FBI Number | |

| DEFENDANT/JUVENILE | Name (Last, First, Middle) GREG CROSLEY ALEXANDER | | | | Alias PAPPA | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Race W - White  I - American Indian B - Black  O - Oriental/Asian | B | Sex m | Date of Birth 0.9.11.57 | Height 5'11" | Weight 170 | Eye Color BRO | Hair Color BLK | Complexion DK | Build MED |
| | Scars, Marks, Tattoos, Unique Physical Features (Location, Type, Description) | | | | | | | Indication of: Alcohol Influence  Y N Unk ☐☐☐ Drug Influence ☐☐☐ | |
| | Local Address (Street, Apt. Number) | | (City) | (State) | (Zip) | Phone | | Residence Type 1. City  3. Florida 2. County  4. Out of State | |
| | Permanent Address (Street, Apt. Number for Parent's Name if Juv. | (City) | (State) | (Zip) | Phone | | Parent Contacted  Y  N ☐  ☐ | |
| | Business Address (Name, Street or Parent's Address if Juv. (City) | | (State) | (Zip) | Phone | | Occupation | |
| | Driver's License State/Number | | Social Security Number | INS Number | | Place of Birth | | Citizenship |

| CO-DEF. | Co-Defendant Name (Last, First, Middle) | | | | Race | Sex | Date of Birth or Age | ☐ 1. Arrested ☐ 2. At Large | ☐ 3. Felony ☐ 4. Misdemeanor ☐ 5. Juvenile |
|---|---|---|---|---|---|---|---|---|---|
| | Co-Defendant Name (Last, First, Middle) | | | | Race | Sex | Date of Birth or Age | ☐ 1. Arrested ☐ 2. At Large | ☐ 3. Felony ☐ 4. Misdemeanor ☐ 5. Juvenile |

| CODE | Activity N. N/A P. Possess | S. Sell B. Buy T. Traffic | R. Smuggle D. Deliver E. Use | K. Dispense/ Distribute | M. Manufacture/ Produce/ Cultivate | Z. Other | Type N. N/A A. Amphetamine | B. Barbiturate C. Cocaine E. Heroin | H. Hallucinogen M. Marijuana O. Opium/Deriv. | P. Paraphernalia/ Equipment S. Synthetic | U. Unknown Z. Other |

| CHARGE | Charge Description KIDNAPPING | | | | | | Counts 2 | ☐ F.S. ☐ Ord. | Statute Violation Number 787.01 | Violation of Section (ORD) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Activity | Drug Type | Amount/Unit | | | | Bond Amount None | Court Number 89-4942CF | | |
| | ☐ PC ☐ Capias ☐ AC | ☐ BW ☐ FW WARRANT | ☐ PW | ☐ Juv. PU ☐ Citation | Date Issued 6-6-89 | ☐ Writ. Att. | | ☐ Domestic Viol. Inj. | ☐ Order of Arrest | |

| CHARGE | Charge Description | | | | | | Counts | ☐ F.S. ☐ Ord. | Statute Violation Number | Violation of Section (ORD) |
|---|---|---|---|---|---|---|---|---|---|---|
| | Activity | Drug Type | Amount /Unit | | | | Bond Amount | Court Number | | |
| | ☐ PC ☐ Capias ☐ AC | ☐ BW ☐ FW | ☐ PW | ☐ Juv. PU ☐ Citation | Date Issued | ☐ Writ. Att. | | ☐ Domestic Viol. Inj. | ☐ Order of Arrest | |

**PROBABLE CAUSE STATEMENT**

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that the above named Defendant committed the following violation of law:

On the _____ day of _____ 19 ____ at _____  ☐ A.M. ☐ P.M.   (Specifically include facts constituting cause for arrest.)

SEE ATTACHED WARRANT SIGNED BY
JUDGE MOXLEY

*[stamped vertically:]* FILED IN OFFICE
BY R.C. WINSTEAD, JR.
CLERK CIR. CT.
BREVARD CO. FLA.
JUN 9 9 30 AM '89
D.C.

Continued for:  Narrative ☐   Charges ☐

Defendant's Relationship to Victim:                P. C. Exists for Charge(s)          Judge's Signature                Date

**NOTICE TO APPEAR**

☐ Mandatory Appearance In Court          Location (Court, Room Number, Address)
☐ You need not appear in Court but must comply with instructions on Reverse Side

Time

Month _____ Day _____ Year _____          Time _____  ☐ A.M. ☐ P.M.

I AGREE TO APPEAR AT THE TIME AND PLACE DESIGNATED TO ANSWER THE OFFENSE CHARGED OR TO PAY THE FINE SUBSCRIBED. I UNDERSTAND THAT SHOULD I WILFULLY FAIL TO APPEAR BEFORE THE COURT AS REQUIRED BY THIS NOTICE TO APPEAR, THAT I MAY BE HELD IN CONTEMPT OF COURT AND A WARRANT FOR MY ARREST SHALL BE ISSUED.

Signature of Defendant/Juvenile's Parent or Custodian | Released to: (Name) | Date | Time | Juvenile Disposition 1. Handled/Processed Within Dept. and Released  2. Turned Over to HRS/CYP  3. Incarcerated (County Jail)  4. Information Only |

| ADMINISTRATIVE | ☐ Miranda Warning | Hold for Other Agency Name: | | Verified By | | BOND INFORMATION | Date | Bonding Agency: | |
|---|---|---|---|---|---|---|---|---|---|
| | Adults Only ☐ Hold for First Appearance Do Not Bond Off. Reason: | | | | | | Bond # | | Amount |
| | I swear/affirm the above and reverse and attached statements are true and correct. | | Sworn to and subscribed before me, the undersigned authority this ___ day of Rhine, 19 89 | | | | Bond # | | Amount |
| | Cpt. S. Bean Officer's/Complainant's Signature | | Signature _____ | | | | Returnable Court Date | | 001507 |
| | 3. MOXLEY '88 Homicide Name (Printed) | ID. No./Dist. | Notary/Law Enf. Officer in Perf of Official Duties | | | | Court Location | | Page ___ of ___ |

# In The Circuit Court Eighteenth Judicial Circuit Of Florida
# In The County Court In And For Brevard County, Florida

**BOOKING OFFICER'S
CERTIFICATE**

STATE OF FLORIDA

vs

Green, Crosley, C.
_____
Accused

I hereby certify that when the above named accused was committed to the custody of the sheriff of the above named county, I booked him at _1:30_ o'clock, _P_ .m., on _6-8-89_ , 19 _89_ , and immediately advised the accused as follows:

(i) You have the right to counsel. You have the right to talk with and be represented by a lawyer.
(ii) If you are unable to pay a lawyer, one will be provided immediately at no charge.
(iii) In order to secure your immediate release you must post a bail in the amount of $_NONE_ .
(iv) If you are unable to post that bond, you will at _1:30_.m. (~~today~~) (tomorrow) be taken before a County Court judge who will consider either reducing your bond or releasing you on your promise to appear in court.
(v) You should consider hiring, or at least talking with, a lawyer before posting bail.
(vi) You have the right to communicate with your lawyer, your family or your friends, and you may complete without charge at least two telephone calls to any location in this County. At your own expense you may make long distance calls.

As booking officer, I asked the accused the following questions and received the following answers:

(i) Do you wish to call a lawyer of your own choice? Answer: _____
(ii) If you are unable to hire a lawyer and you want to talk with one, I will call the Public Defender right now; do you want me to call the Public Defender to come and talk with you now? Answer: _____

ACTION:

At _____ o'clock. _____ .m., _____
I called the Public Defender and advised him that the above accused desired to talk with him. The Public Defender appeared at _____ o'clock, _____ .m, _____ 19 _____ ,
· and conferred with the accused.

I permitted and assisted the above accused to make and complete the following telephone calls:

| TIME: | DATE: | PERSON | TELEPHONE NUMBER: |
|---|---|---|---|
| 2:00 PM | 6-8-87 | O'Connor Green | 268-5860 |
| | | | |
| | | | |
| | | | |

I certify that the above is correct.

_X Crosley Green_ .          _D. Maynard_ 390
Accused                          Booking Officer

_____
* Witness

001508

* A witness to the booking officer's advice, questions and action should sign if the accused declines to sign.

NO.  89-4942-CF-A-X

IN CIRCUIT COURT
EIGHTEENTH JUDICIAL CIRCUIT OF FLORIDA
BREVARD COUNTY

STATE WITNESSES

THE STATE OF FLORIDA

VS

CROSLEY ALEXANDER GREEN

AGENT SCOTT NYQUIST
DEPUTY ODELL KISER
KIM HALLOCK
DALE CARLILE
WILLIE HAMPTON

INDICTMENT FOR

COUNT I      FELONY MURDER (000020)
COUNT II     ROBBERY (000219)
COUNT III    ROBBERY (000219)
COUNT IV     KIDNAPPING (000226)
COUNT V      KIDNAPPING (000226)

Found Spring Term, A.D. 1989

_Charles W Walsh_
Foreman of the Grand Jury

Presented in Open Court and Filed this
20th day of June , 1989

_R.C. Winstead, JR_
Clerk

By _Karen Rowell_                D.C.

IN THE NAME AND BY AUTHORITY OF THE STATE OF FLORIDA

IN THE CIRCUIT COURT OF THE Eighteenth Judicial Circuit of the State of Florida for Brevard County, at the Spring Term thereof, in the year of our Lord one thousand nine hundred and eighty nine, Brevard County, to wit:   The Grand Jurors of the State of Florida:   inquiring in and for the body of the County of Brevard, upon their oaths do charge that

CROSLEY ALEXANDER GREEN

on the 4th day of April, 1989, in the County of Brevard, and State of Florida, did then and there unlawfully kill a human being, CHARLES FLYNN, JUNIOR, by SHOOTING CHARLES FLYNN, JUNIOR WITH A FIREARM and said killing was committed by CROSLEY ALEXANDER GREEN, while engaged in the perpetration, or in the attempt to perpetrate by force, violence, assault or putting in fear, unlawfully rob, steal and take away from the person or custody of CHARLES FLYNN, JUNIOR, KIM HALLOCK, against THEIR will, MONEY, of SOME VALUE, good and lawful currency of the United States of America, the property of CHARLES FLYNN, JUNIOR, KIM HALLOCK, as owner or custodian, with intent to permanently deprive said owner or custodian of a right to said property or a benefit therefrom, and in the course of committing said ROBBERY, CROSLEY ALEXANDER GREEN, carried and had in HIS possession a "firearm" as described in Subsection 790.001(6), Florida Statutes, contrary to Sections 812.13(1), 812.13(2)(a) and 775.087(2), Florida Statutes, contrary to Section 782.04(1)(a)2, Florida Statutes, and/or did then and there forcibly, secretly or by threat, confine, abduct or imprison another CHARLES FLYNN, JUNIOR, KIM HALLOCK, against THEIR will, and without lawful authority, with intent to commit or facilitate commission of a felony, to wit:   ROBBERY or inflict bodily harm upon or terrorize said victims or another person, contrary to Sections 787.01(1)(a)(2), 787.01(1)(a)3, Florida Statutes,

COUNT II

The Grand Jurors of the State of Florida:   inquiring in and for the body of the County of Brevard, upon their oaths do charge that in Brevard County, Florida, on the 4th day of April, 1989, CROSLEY ALEXANDER GREEN, did then and there by force, violence, assault or putting in fear, unlawfully rob, steal and take away from the person or custody of CHARLES FLYNN, JUNIOR, against HIS will, MONEY, of SOME VALUE, good and lawful currency of the United States of America, the property of CHARLES FLYNN, JUNIOR, as owner or custodian, with intent to permanently deprive said owner or custodian of a right to said property or a benefit therefrom, and in the course of committing said ROBBERY, CROSLEY ALEXANDER GREEN, carried and had in HIS possession a "firearm" as described in Subsection 790.001(6), Florida Statutes, contrary to Sections 812.13(1), 812.13(2)(a) and 775.087(2), Florida Statutes,

COUNT III

The Grand Jurors of the State of Florida:   inquiring in and for the body of the County of Brevard, upon their oaths do charge that in Brevard County, Florida, on the 4th day of April, 1989, CROSLEY ALEXANDER GREEN, did then and there by force, violence, assault or putting in fear, unlawfully rob, steal and take away from the person or custody of KIM HALLOCK, against HER will, MONEY, of SOME VALUE, good and lawful currency of the United States of America, the property of KIM HALLOCK, as owner or custodian, with intent to permanently deprive said owner or custodian of a right to said property or a benefit therefrom, and in the course of committing said ROBBERY, CROSLEY ALEXANDER GREEN, carried and had in HIS possession a "firearm" as described in Subsection 790.001(6), Florida Statutes, contrary to Sections 812.13(1), 812.13(2)(a) and 775.087(2), Florida Statutes,

COUNT IV

The Grand Jurors of the State of Florida: inquiring in and for the body of the County of Brevard, upon their oaths do charge that in Brevard County, Florida, on the 4th day of April, 1989, CROSLEY ALEXANDER GREEN, did then and there forcibly, secretly or by threat, confine, abduct or imprison another CHARLES FLYNN, JUNIOR, against HIS will, and without lawful authority, with intent to commit or facilitate commission of a felony, to wit: ROBBERY and/or inflict bodily harm upon or to terrorize said victims or another person, contrary to Sections 787.01(1)(a)(2), 787.01(1)(a)3, Florida Statutes,

COUNT V

The Grand Jurors of the State of Florida: inquiring in and for the body of the County of Brevard, upon their oaths do charge that in Brevard County, Florida, on the 4th day of April, 1989, CROSLEY ALEXANDER GREEN, did then and there forcibly, secretly or by threat, confine, abduct or imprison another KIM HALLOCK, against HER will, and without lawful authority, with intent to commit or facilitate commission of a felony, to wit: ROBBERY and/or inflict bodily harm upon or to terrorize said victims or another person, contrary to Sections 787.01(1)(a)(2), 787.01(1)(a)3, Florida Statutes,

and against the peace and dignity of the State of Florida.

_____
Foreman of the Grand Jury

I hereby certify that I have, as authorized and required by law, advised the Grand Jury returning the foregoing indictment.

_____
Michael R. Hunt, Designated Assistant State
Attorney for the Eighteenth Judicial Circuit
Florida; Prosecuting for said State

001511

FCIC/NCIC CHECK YES ☐   NO ☐

**ARREST/NOTICE TO APPEAR**
**PROBABLE CAUSE AFFIDAVIT/**
**JUVENILE REFERRAL**

1. Arrest                    4. Complaint Affidavit        Juvenile
2. Notice to Appear   5. Request for Custody
3. Arrest Affidavit     6. Juvenile Referral              1

**ADMINISTRATIVE**

OBTS Number: A006 45 88 6

Agency ORI Number: Agency Name: BCCO

FLO #: 0,5,0,0,0,3

Agency Report Number: 8,7,63,018

Charge Type Check as many as apply: ☐ 1. Felony  ☐ 2. Traffic Felony  ☐ 3. Misdemeanor  ☐ 4. Traffic Misdemeanor  ☐ 5. Ordinance  ☐ 6. Other

Weapon Seized/Type: 1. Yes  2. No  ☑2

Agency Arrest Number: 31195

Location of Arrest (Include Name of Business): BC3D

Location of Offense (Business Name, Address):

Date of Arrest: 8.6.21.89   Time of Arrest: 1645   BCSO Date: 062189   BCSO Time: 1645   Jail Date: 062189   Jail Time: 1645   Fingerprinted: ☐ Identification Only ☐ Criminal   ☐ AFIS   By:

Date of Offense:   FDLE Number:   DOC Number:   FBI Number:

**DEFENDANT/JUVENILE**

Name (Last, First, Middle): GREEN, CROSLEY ALEXANDER   Alias: PAPPA

Race: B   W - White  I - American Indian   B - Black   O - Oriental/Asian   Sex: M   Date of Birth: 09.1.57   Height: 5'11   Weight: 170   Eye Color: BRO   Hair Color: BLK   Complexion: DRK   Build: MED

Indication of: Alcohol Influence ☐ Y ☐ N ☐ Unk   Drug Influence ☐ ☐ ☐

Scars, Marks, Tattoos, Unique Physical Features (Location, Type, Description): SCAR FOREHEAD

Local Address (Street, Apt. Number): 3658 BRIERCLIFF   (City): MIMS   (State): FL   (Zip):   Phone: NONE   Residence Type: 1. City  3. Florida  2. County  4. Out of State

Permanent Address (Street, Apt. Number) (or Parent's Home if Juv.):   (City):   (State):   (Zip):   Phone:   Parent Contacted ☐ Y ☐ N

Business Address (Name, Street) or (Parent's Address if Juv.): UNEMPLOYED   (City):   (State):   (Zip):   Phone:   Occupation:

Driver's License State/Number: NONE   Social Security Number: 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   INS Number:   Place of Birth: Mims, FL   Citizenship: USA

**CO-DEF.**

Co-Defendant Name (Last, First, Middle):   Race:   Sex:   Date of Birth or Age: ☐ 1. Arrested ☐ 4. Misdemeanor ☐ 2. At Large ☐ 3. Felony ☐ 5. Juvenile

Co-Defendant Name (Last, First, Middle):   Race:   Sex:   Date of Birth or Age: ☐ 1. Arrested ☐ 4. Misdemeanor ☐ 2. At Large ☐ 3. Felony ☐ 5. Juvenile

**CODE**

Activity: N. N/A  P. Possess   S. Sell  B. Buy  T. Traffic   R. Smuggle  D. Deliver  E. Use   K. Dispense/ Distribute   M. Manufacture/ Produce/ Cultivate  Z. Other   Type: N. N/A  A. Amphetamine   B. Barbiturate  C. Cocaine  E. Heroin   H. Hallucinogen  M. Marijuana  O. Opium/Deriv.   P. Paraphernalia/ Equipment  S. Synthetic   U. Unknown  Z. Other

**CHARGE**

Charge Description: GRAND JURY INDICTMENT (REF BELOW)   Counts: ☐ F.S. ☐ Ord.   Statute Violation Number:   Violation of Section (ORD):

Activity:   Drug Type:   Amount/Unit:   Bond Amount: ☐   Court Number: 89-4942-C7A

☐ PC  ☐ Capias  ☐ AC  ☐ BW  ☐ FW  ☐ PW  ☐ Juv. PU  ☐ Citation   Date Issued: 062089   Writ. Att.: JDG ACKLEY   Domestic Viol. Inj.:   Order of Arrest: ANTOON

**CHARGE**

Charge Description:   Counts: ☐ F.S. ☐ Ord.   Statute Violation Number:   Violation of Section (ORD):

Activity:   Drug Type:   Amount/Unit:   Bond Amount:   Court Number:

☐ PC  ☐ Capias  ☐ AC  ☐ BW  ☐ FW  ☐ PW  ☐ Juv. PU  ☐ Citation   ☐ Writ. Att.   ☐ Domestic Viol. Inj.   ☐ Order of Arrest

**PROBABLE CAUSE STATEMENT**

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that the above named Defendant committed the following violation of law:

On the ____ day of ____ 19__ at ____ ☐ A.M. ☐ P.M.   (Specifically Include facts constituting cause for arrest.)

REF FELONY MURDER/ 2CTS ROBBERY/ 2CTS KIDNAPPING

"ADDITIONAL CHARGES"

Continued for: Narrative ☐   Charges ☐

Defendant's Relationship to Victim:   P. C. Exists for Charge(s):   Judge's Signature:   Date:

**NOTICE TO APPEAR**

☐ Mandatory Appearance In Court   ☐ You need not appear in Court but must comply with instructions on Reverse Side   Location (Court, Room Number, Address):   Time:   Month:   Day:   Year:   Time:

I AGREE TO APPEAR AT THE TIME AND PLACE DESIGNATED TO ANSWER THE OFFENSE CHARGED OR TO PAY THE FINE SUBSCRIBED. I UNDERSTAND THAT SHOULD I WILLFULLY FAIL TO APPEAR BEFORE THE COURT AS REQUIRED BY THIS NOTICE TO APPEAR, THAT I MAY BE HELD IN CONTEMPT OF COURT AND A WARRANT FOR MY ARREST SHALL BE ISSUED.

Signature of Defendant/Juvenile's Parent or Custodian:   Released to: (Name):   Date:   Time:   Juvenile Disposition: 1. Handled/Processed Within Dept. and Released   2. Turned Over to HRS/CYF  3. (Secured Adult/County Jail)  4. Information Only

**ADMINISTRATIVE**

☐ Miranda Warning   Hold for Other Agency   Name:   Verified By:   Date:   Bonding Agency:

Adults Only ☐ Hold for First Appearance   Do Not Send Out.   Reason:

I swear/affirm the above and attached statements are true and correct. Deville 318

Officer/Complainant's Signature: Randy Deville 318   Sworn to and subscribed before me, the undersigned authority this 21 day of June, 19 89   Signature: Evelyn W. Oates 376   Notary/Law Enf. Officer in Perf of Official Duties

Name (Printed):   I.D. No./Dist.

**BOND INFORMATION**

Bond #:   Amount:

Bond #:   Amount:

Returnable Court Date: 001512   Time: ☐ A.M. ☐ P.M.

Court Location:   Page:   of:

923 01   ORIGINAL: Court File     YELLOW: Law Enforcement Agency     PINK: State Attorney     GOLDENROD: Defendant's Copy

89-4942-CFA

# In The Circuit Court Eighteenth Judicial Circuit Of Florida
# In The County Court In And For Brevard County, Florida

**BOOKING OFFICER'S CERTIFICATE**

STATE OF FLORIDA

vs

_Green, Crosley A._
Accused

I hereby certify that when the above named accused was committed to the custody of the sheriff of the above named county, I booked him at _1810_ o'clock, _P_ .m., on _21 June_ , 19 _89_ , and immediately advised the accused as follows:

(i)    You have the right to counsel. You have the right to talk with and be represented by a lawyer.
(ii)   If you are unable to pay a lawyer, one will be provided immediately at no charge.
(iii)  In order to secure your immediate release you must post a bail in the amount of $ _0_ .
(iv)   If you are unable to post that bond, you will at _1:30_ P.m. (today) (tomorrow) be taken before a County Court judge who will consider either reducing your bond or releasing you on your promise to appear in court.
(v)    You should consider hiring, or at least talking with, a lawyer before posting bail.
(vi)   You have the right to communicate with your lawyer, your family or your friends, and you may complete without charge at least two telephone calls to any location in this County. At your own expense you may make long distance calls.

As booking officer, I asked the accused the following questions and received the following answers:

(i)    Do you wish to call a lawyer of your own choice? Answer: _NO_
(ii)   If you are unable to hire a lawyer and you want to talk with one, I will call the Public Defender right now; do you want me to call the Public Defender to come and talk with you now? Answer: _____

ACTION:

At _____ o'clock. _____ .m., _____ ,19 ____ ,
I called the Public Defender and advised him that the above accused desired to talk with him. The Public Defender appeared at _____ o'clock, _____ .m, _____ 19 ____ , and conferred with the accused.

I permitted and assisted the above accused to make and complete the following telephone calls.

| TIME: | DATE: | PERSON | TELEPHONE NUMBER: |
|-------|-------|--------|-------------------|
|       |       |        |                   |
|       |       |        |                   |
|       |       |        |                   |

I certify that the above is correct.

_Crosley Green_
Accused

_Evelyn Carter_
Booking Officer

\* Witness

001513

\* A witness to the booking officer's advice, questions and action should sign if the accused declines to sign.

# Capias
# Circuit Court
## IN THE STATE OF FLORIDA

FILED

JUL 6

R.C. W...
CLERK ... COURT
BRE... TY FL.
BY ... D.C.

Case No. 89-4942CFA-X

To All and Singular the Sheriffs of the State of Florida and other duly authorized officers, Greetings:

You are hereby commanded to take **Crosley Alexander Green**

_____ if he/~~she~~ be found in your County, and him/~~her~~ safely

keep so that you have his/~~her~~ body before the Judge of our Brevard County Court of the State of Florida, at

the Court House in Titusville, Florida, him/~~her~~ to answer unto the State of Florida on an ~~information~~ found

indictment

against him/~~her~~ by the ~~State Attorney~~ for the County of Brevard, Florida for _____

Grand Jury

**I Felony Murder   II Robbery   III Robbery
IV Kidnapping   V Kidnapping**

and have then and there this Writ.

Bond set at $ **NONE.**

_____
Circuit Judge

WITNESS R. C. Winstead, Jr., Clerk of our

said Circuit Court and the Seal of said Court, at the

Court House, at Titusville, Florida, aforesaid this

**20** day of **June** A.D. 19 **89**

_Karen Rowell_
Deputy Clerk

_Michael R. Ahn_
A.S.A., State Attorney

15

001514

**Rule 3.988 (j)**

## SENTENCING GUIDELINES SCORESHEET

| 1. Primary Docket Number | 2. Additional Docket Numbers | | 3. OBTS Number | 4. Category: |
|---|---|---|---|---|
| 89-4942-CF-A-X | None | | 0000617587 | ☐1 ☐2 ☐3 ☐4 ☐5 ☐6 ☐7 ☐8 ☒9 |

| 5. Name (Last Name First) | 6. Date of Birth | 7. Sex: | 8. Race: | 9. Violation | 10. County |
|---|---|---|---|---|---|
| GREEN, CROSLEY ALEXANDER | 9/11/57 | ☒M ☐F | ☒B ☐W ☐Other | ☐Prob ☐CC | Brevard |

| 11. Judge at Sentencing | 12. Date of Offense | 13. Date of Sentence | 14. | 15. DOC Number |
|---|---|---|---|---|
| John B. Antoon | 4/4/89 | | ☐Plea ☒Trial | 902925 |

**OFFICE USE ONLY** | **POINTS**

**I. PRIMARY OFFENSE AT CONVICTION**

| Counts | Degree | Statute | Description | |
|---|---|---|---|---|
| 2 | 1°F PBL | 787.01(1)a2 | Kidnapping | I. 217 |

**II. ADDITIONAL OFFENSES AT CONVICTION**

| Counts | Fel/Misd | Degree | Statute | Description | |
|---|---|---|---|---|---|
| 2 | Fel. | 1°F PBL | 812.13(1)(2)a | Robbery | |

(Continue on Reverse) | II. 45

**III. A. PRIOR RECORD**

| Counts | Fel/Misd | Degree | Statute | Description | |
|---|---|---|---|---|---|
| 1 | Fel. | 1°F PBL | 812.13(1)(2)a | Armed Robbery | |
| 1 | Misd | 2° | 316.192 | Reckless Driving | |
| 1 | Misd | 2° | 322.03(1)a | No Valid Drivers License | |
| 1 | Misd | 2° | 320.07(3)b | Expired Registration More Than 4 months | |
| 1 | Misd | 1° | 893.147(1)(b) | Possession of Drug Paraphernalia | |
| 1 | Misd | 1° | 316.1935 | Flee/Elude LEO | |

(Continue on Reverse) | III. A. 126

**III. B. SAME CATEGORY PRIORS (categories 3, 5 and 6 only)** | III. B. _____

**III. C. PRIOR DUI CONVICTIONS (category 1 only)** | III. C. _____

**IV. LEGAL STATUS AT TIME OF OFFENSE**

_X_ (1) no restrictions   _____ (2) legal constraint | IV. 0

**V. VICTIM INJURY**

Number of Scoreable Victim Injuries   Degree of Injury

| | none or no contact |
|---|---|
| | slight or contact but no penetration |
| | moderate or penetration |
| 1 | severe or death |

V. 24

TOTAL POINTS _____
411

RECOMMENDED SENTENCE (25) 22-27 yrs.   PERMITTED SENTENCE 17-40 years

TOTAL SENTENCE IMPOSED Ct. I - 27 yrs., Ct III.-27 yrs. Ct IV 27 yrs., Ct V 27 yrs.

REASONS FOR DEPARTURE Consecutive to Ct. I, but II-V consecutive w one another.

JUDGE John C. Antoon II   PREPARER Robert Ritter, CPS II

**OFFICE USE ONLY**

| T.S. _____ | CC _____ | Prob. _____ |
|---|---|---|
| S.P. _____ | C.J _____ | R.F. _____ |

001515

300

PRIMARY DOCKT      89-4942-CF-A-X

OFFICE USE ONLY

II.  CONTINUATION OF ADDITIONAL OFFENSES AT CONVICTION

| Counts | Fel/Misd | Degree | Statute | Description |
|--------|----------|--------|---------|-------------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

III.  A. CONTINUATION OF PRIOR RECORD

| Counts | Fel/Misd | Degree | Statute | Description |
|--------|----------|--------|---------|-------------|
| 1 | Fel | 2° | | Sale of Cocaine |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

001516

**COURT MINUTES / ORDER**
BREVARD COUNTY, FLORIDA

| DEFENDANT | DATE | TYPE OF PROCEEDING |
|---|---|---|
| Green, Crosley Alexander | 2-8-91 | Sentencing |

**CHARGES**

I 1st Degree Felony Murder
I Robbery w/ Firearm
III Robbery w/ Firearm
IV Kidnapping
I Kidnapping

| | CASE NUMBER | TAPE & LOG | PRESIDING JUDGE |
|---|---|---|---|
| | 89-4942-CFA | | Antoon |

CLERK Moon / Lersen
RECORDER/REPORTER Angell
BAILIFF Osborne Stiles
BAILIFF Nelson, Shrader, Adkins
DEF. COUNSEL R. Parker
STATE ATTORNEY C. White / P. Williams
PTR REPRESENTATIVE

AMENDED CHARGE:
STATE:
COURT

| DEFENDANT | | STATE ACTION | | NEXT COURT APPEARANCE | |
|---|---|---|---|---|---|
| ✓ PRESENT | NOT PRESENT | NOLLE PROSEQUI — COUNT(S) | | SECOND APPEARANCE | VOP ARRAIGNMENT |
| WITHOUT COUNSEL | COUNSEL PRESENT | PRESENTED NO EVIDENCE — COUNT(S) | | CONTROL | VOP HEARING |
| WITH COUNSEL | IN DEFENDANT'S BEHALF | NOTICE OF NO INFORMATION | | ADVERSARY PRELIMINARY HEARING | NON JURY TRIAL |
| ADVISED OF RIGHTS AND CHARGES | | WRITTEN | ORAL | HEARING | ARRAIGNMENT DEFERRED |
| WAIVED SPEEDY TRIAL | | REDUCED MISDEMEANOR | | PLEA | SENTENCING |
| | | UPGRADED FELONY | | CONTINUED: | DOCKET SOUNDING (JURY TRIAL) |
| **WARRANTS** | | **PLEA** | | COURT | STATE | P.D./ATTN |
| DEPUTY | PRESENT & : | IN ABSENTIA | ORIGINAL WITHDRAWN | REASON: | |
| | | GUILTY | NOT GUILTY | NOLO CONTENDERE | DATE: TIME: |
| FILED LOCAL AFFIDAVIT & WARRANT | | LESSER INCLUDED OFFENSE | | | |
| ADVISED COURT DEFENDANT REC'D. | | **VERDICT** | | LOCATION: FL | |
| BY | AUTHORITIES | JURY RETURNED WITH VERDICT OF: | | | |
| ON | | GUILTY | NOT GUILTY | DIVISION: JUDGE: | |
| TO SERVE AS A HOLD UNTIL LOCAL CHARGES DISMISSED OR UNTIL SCHEDULED BOND POSTED | | COURT FOUND DEFENDANT TO BE: | | ACKNOWLEDGED: | |
| ADVISED FOREIGN COURT WILL NOT EXTRADITE | | GUILTY | NOT GUILTY | | |
| ADVISED GOVERNOR'S WARRANT SERVED | | **COURT ACTION** | | (DEFENDANT/ATTORNEY SIGNATURE) | |
| DEFENDANT SIGNED WAIVER OF EXTRADITION | | ✓ ACCEPTED PLEA | ARRAIGNED | | |
| **FAILURE TO APPEAR** | | ✓ ADJUDICATED GUILTY | FOUND DEFENDANT IN VIOLATION OF PROBATION | | |
| COURT ORDERED | | WITHHELD ADJUDICATION OF GUILT | FOUND DEFENDANT IN CONTEMPT OF COURT | | |
| BENCH WARRANT | BOND AMOUNT | DISMISSED | SUSPENDED ORIGINAL FINE. | | |
| INSTANTER | $ | IMPOSED PUBLIC DEFENDER'S LIEN IN THE AMOUNT OF | $ | | |
| CAPIAS | NO ROR/NO PTR | ✓ ADV. RIGHT TO APPEAL W/IN 30 DAYS | | | |
| **ATTORNEY** | | **LIBERTY STATUS** | | | |
| DEFENDANT DETERMINED: | | BOND: | | | |
| INDIGENT | NON INDIGENT | CASH | ORDER | **BOND INFORMATION** | |
| COURT APPOINTED | | SURETY | ROR | OUT OF CUSTODY | |
| ✓ PUBLIC DEFENDER | ✓ APPEAL PURPOSES ONLY | UNSECURED SIGNATURE | PTR | NUMBER—TYPE—AMOUNT | |
| CONFLICT ATTORNEY | | SECURED SIGNATURE | SUMMONS | | |
| DEFENDANT WAIVED COUNSEL | | CITATION | NOTICE TO APPEAR | SATISFIED / RELEASED | |
| COURT TOOK NO ACTION AS TO COUNSEL | | DISCHARGED | REMANDED | FORFEIT IN FULL SATISFACTION | |
| COUNSEL RELIEVED FROM ANY FURTHER REPRESENTATION | | | | ESTREATED | |
| COURT WAS ADVISED DEFENDANT WILL RETAIN COUNSEL | | BENCH WARRANT CAPIAS RECALLED | ON DATE | ESTREATURE DATED | SET ASID |
| NOTICE OF APPEARANCE, WAIVER OF ARRAIGNMENT AND DEMAND FOR JURY TRIAL FILED | | DEPUTY NOTIFIED: | | DEDUCT $ | |
| NOTICE OF APPEAL FILED IN OPEN CT | | BY CLERK: | | REFUND BALANCE TO DEPOSITOR | |
| | | | | BALANCE OF FINE TO BE PAID | |

**FAILURE TO APPEAR WILL RESULT IN A BENCH WARRANT BEING ISSUED FOR YOUR ARREST**

REMARKS:

001517

DONE AND ORDERED THIS 8 DAY OF February 19 91 IN Melbourne
AND FILED IN OPEN COURT 4:00 P M. BREVARD COUNTY, FLORIDA

JUDGE / DEPUTY CLERK Moon

302 CLERK 109

DEFENDANT ___ P.D./DEF. COUNSEL ___ STATE ATTY. ___ SHERIFF ___ PROBATION/CRIM. LAW

**COURT MINUTES/ORDER**
BREVARD COUNTY, FLORIDA

PAGE          OF

| DEFENDANT | DATE | CASE | NUMBER |
|---|---|---|---|
| Green, Crosley Alexander | 2-8-91 | 89-4942-CFA | |

| SENTENCE: PROBATION | BOND INFORMATION IN CUSTODY | CHARGES/CASE # CHANGES |
|---|---|---|
| SUPERVISED / UNSUPERVISED | SET AT / REDUCED TO / INCREASED TO | ORIGINAL CHARGES LISTED ON THE 923.01 FORM HAVE BEEN CHANGED |
| PERIOD OF   YEARS:   MO: | $   CASH / SURETY | |
| CONCURRENT W | SECURED SIGNATURE   UNSECURED SIGNATURE | FORMER CASE # |
| CONSECUTIVE W | | |

CONDITIONS / STATUS / SURETY:
- ALL STD. CONDITIONS — REVOKED
- COMM SER — REINSTATED — ROR
- RESTITUTION — TERMINATED — NO BOND:
- $30 PER MO. COST OF SUPER — SATIS-FACTORILY — UNTIL FURTHER ORDER OF COURT
- SEE "REMARKS" — UNSATIS-FACTORILY — DUE TO NATURE OF OFFENSE
  - UNTIL EVALUATION COMPLETE

JAIL
| SENTENCE TO: | DAY(S) DETENTION CENTER WITH |
| | DAY(S) LESS CREDIT FOR TIME SERVED |
| | DAY(S) SUSPENDED |

CONDITIONS:
- ABIDE BY ALL LAWS
- MAKE ALL COURT APPEARANCES
- REMAIN IN BREVARD COUNTY
- REMAIN IN CONTACT WITH ATTORNEY
- NO CONTACT WITH VICTIM

CONCURRENT W
CONSECUTIVE W

VICTIM NAME

COMMENCING:

CURFEW _____ M TO _____ M

WEEKENDS   SEE SUPPLEMENT

ORDER OF THE COURT
- PROBABLE CAUSE
- NO IMPRISONMENT STATEMENT
- PRE-SENTENCE INVESTIGATION
- PRE-DISPOSITION REPORT
- EVALUATION ORDERED:
  - PSYCHIATRIC / MEDICAL
  - DETENTION FACILITY
  - MENTAL HEALTH CENTER (SHERIFF TO TRANSPORT)
  - COPY OF REPORT TO BE FILED WITH COURT
- 5 DAY HOLD (VOP)   RELEASED   INVOKED
- FINGERPRINTED IN OPEN COURT

RELEASED / DISCHARGED
REMANDED

ASSESSMENTS
- FINE
- BC. C.
- 5% SURCHG.
- V.C.
- LAW ENF EDUCATION FUND/PAC
- STATE/PA
- COURT COSTS
- CLERK'S FEE
- CRIMINAL TRUST FUND
- EMERGENCY MEDICAL TRUST FUND
- IMP. DRIVERS & SPEEDERS TRUST FUND
- ADM. TR. FUND OF DEPT. OF LAW ENF.
- SUBSTANCE ABUSE SURCHARGE FEE
- OTHER
- TOTAL
- PAYABLE BY:

PARTIAL PAYMENTS NOT ACCEPTED

Payment may be made at any of the locations listed below:
PARKWAY COMPLEX
700 S. PARK AVENUE, BLDG. 2
TITUSVILLE, FLORIDA

BRANCH COURTHOUSE
1040 SOUTH DIXIE HIGHWAY
ROCKLEDGE, FLORIDA

BRANCH COURTHOUSE
50 SOUTH NIEMAN AVENUE
MELBOURNE, FLORIDA

Mail-
Clerk of the Court
P.O. Box 3026
Titusville, FL 32781-3026

REMARKS: M New Trial filed by Defense — Ct denied motion
I - Death Penalty
II - 27 yrs DOC,            Cts II-V to run conc. w/each other
III 27 yrs DOC             but consecutive to Ct I
IV & V - 27 yrs DOC

DONE AND ORDERED THIS ___8/___ DAY OF ___February___ 19_91_ IN ___Melbourne___
BREVARD COUNTY, FLORIDA

AND FILED IN OPEN COURT ___4:00 p___ M.

JUDGE / DEPUTY CLERK

001518

CLERK 109

IN THE CIRCUIT COURT OF
THE EIGHTEENTH JUDICIAL
CIRCUIT, IN AND FOR
BREVARD COUNTY, FLORIDA

CASE NO. 89-4942-CF-A

STATE OF FLORIDA,

        Plaintiff,

vs.

CROSLEY ALEXANDER GREEN,

        Defendant.



## JUDGMENT AND SENTENCE

    The defendant, CROSLEY ALEXANDER GREEN, is before the court for sentencing. On September 5, 1990, after hearing the evidence and instructions on the law, the jury returned a verdict of guilty on the charges of: Count I, First Degree Felony Murder, Section 782.04(1)(a)2, Florida Statutes; Count II, Robbery With a Firearm, Section 812.13(1), 812.13(2)(a), Florida Statutes; Count III, Robbery With a Firearm, Sections 812.13(1), 812.13(2)(a), Florida Statutes; Count IV, Kidnapping, Sections 787.01(1)(a)2, 787(1)(a)3, Florida Statutes; and Count V, Kidnapping, Sections 787.01(1)(a)2, 787(1)(a)3, Florida Statutes. On September 27, 1990, the jury, in its advisory verdict, recommended the defendant be sentenced to death by a vote of 8-4. A presentence investigation report was prepared by Probation and Parole Services.

    The court considered the testimony and evidence introduced at trial and at the penalty phase of these proceedings. It also considered the arguments made at the sentencing hearing, the advisory verdict of the jury, and the arguments of counsel. The

*Certified copy to Ct Reporter*
*2/19/91*

RETURN TO: CRIMINAL LAW
DEPARTMENT
R.C. WINSTEAD, JR.  001519
CLERK OF CIRCUIT COURT

court now determines whether any aggravating circumstances have been established beyond a reasonable doubt, whether any mitigating circumstances exist, and what weight these aggravating and mitigating circumstances should be given if found to exist.

The operative facts relevant to sentencing are now set forth. On April 4, 1989, the defendant walked past Charles Flynn, Jr. and Kimberly Sue Hallock as they were parked in Flynn's pick-up truck at Holder Park, Mims, Florida, at approximately 11:30 p.m.. A short time later Flynn exited the truck to urinate and was approached by the defendant armed with a pistol. Hallock, who remained seated in the center of truck seat, heard Flynn say, "Hold on, wait a minute, man, put it down." She then removed a pistol from the glove compartment and put it under a denim jacket on the truck seat. The defendant ordered Flynn to get on his knees and Hallock to scoot toward the driver's seat. He asked if they had money. Flynn said he didn't have his wallet, and Hallock said she had five dollars, which she took from her purse and handed over. While he held his pistol to Flynn's head, he ordered Hallock to remove the lace from one of Flynn's high-top tennis shoes which he saw in the truck. The defendant grabbed the lace from Hallock and tied Flynn's hands behind his back. While he was tying Flynn's hands, his pistol discharged. He then removed Flynn's wallet from his pocket, threw it at Hallock who was still in the truck, and told her to count. Hallock got out of the truck, counted $185.00, and turned the money over to the defendant.

After he had the money the defendant ordered Hallock to start

2

RETURN TO: CRIMINAL LAW DEPARTMENT
R.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT

BK3110PG2147

001520

the truck.  Ignoring pleas from Flynn that Hallock be left behind, the defendant ordered Flynn and Hallock back into the truck. Hallock started to get in first, but the defendant pulled her back. Flynn then got in and was seated on the passenger side.  Hallock got in next and was seated in the middle.  The defendant drove the truck between two and four miles to a citrus grove in North Brevard County, requiring his victims to keep their heads down so as not to see where they were going while holding his pistol to Hallock's side.  During the ride Flynn found the pistol Hallock had earlier hidden under the jacket.  Upon coming to a stop the defendant got out of the truck and pulled Hallock out through the door telling Flynn to stay in the truck.  As he tried to close the door behind them, Flynn blocked the door.  Hallock broke away and tried to escape, but the defendant threw her to the ground, and while holding the gun to her head, told her, "You are a slut, and you'll do what I say or I'll blow your brains out."  With his hands still tied, Flynn then moved to the edge of the truck seat with the pistol Hallock had earlier hidden, and fired from behind his back. He then dove forward onto the ground.  The defendant then let go of Hallock who reentered the truck.  As she drove away, Hallock heard Flynn yell, "Go, go go," and saw the defendant turn, standing over Flynn, firing his handgun in Flynn's direction.

Hallock drove to safety and reported the incident by telephone at 1:11 a.m.  At 1:42 a.m. Flynn was found by sheriff's deputies lying on his stomach, with his hands tied behind his back.  He was conscious when he was found, but his only response to questions was

3

RETURN TO: CRIMINAL LAW
DEPARTMENT
R.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT

BK3110PG2148

001521

"Get me out of here - I want to go home." He lost consciousness, and by the time medical assistance arrived at 1:57 a.m. he was dead. The cause of death was a gunshot wound to his chest.

### AGGRAVATING CIRCUMSTANCES - FLA. STAT. 921.141(5)

1. FLA. STAT. 921.141(5)(a)
WHETHER THE MURDER WAS COMMITTED BY A PERSON UNDER SENTENCE OF IMPRISONMENT.

   This aggravating element was not present. The jury was not instructed as to this aggravating circumstance.

2. FLA. STAT. 921.141(5)(b)
WHETHER THE DEFENDANT WAS PREVIOUSLY CONVICTED OF ANOTHER CAPITAL FELONY OR OF A FELONY INVOLVING THE USE OR THREAT OF VIOLENCE.

   The state urges the court to consider contemporaneous convictions for robbery and kidnapping in support of this aggravating circumstance as allowed in Brown v. State, 473 So.2d 1260 (Fla. 1985) and Correll v. State, 523 So.2d 562 (Fla. 1988). Because both Flynn and Hallock were victims of kidnapping and robbery, the robbery and kidnapping of Hallock could be considered as the basis for finding the existence of this circumstance. Wasko v. State, 505 So.2d 1314 (Fla. 1987). In this case, however, since the kidnappings are the basis for the aggravating circumstance, "Capital Felony Committed While Defendant Engaged in the Commission of Kidnapping," Section 921.141(5)(d), Florida Statutes, discussed in Paragraph 4 below, and the robberies are the basis for the aggravating circumstance, "Murder Was Committed for Pecuniary Gain," Section 921.141(5)(f), Florida Statutes, discussed in Paragraph 6 below, it would be improper doubling to consider these felonies for purpose of this aggravating circumstance.

   The state however did establish beyond a reasonable doubt that the defendant was convicted of another armed robbery on January 26, 1977, in the State of New York. This aggravating circumstance does exist. See Cooper v. State, 336 So.2d 1133 (Fla. 1976).

3. FLA. STAT. 921.141(5)(c)
WHETHER THE DEFENDANT KNOWINGLY CREATED A GREAT RISK TO MANY PERSONS.

4

RETURN TO: CRIMINAL LAW
DEPARTMENT
R.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT
_001522

BK 3 1 1 0 PG 2 1 4 9

This aggravating element was not present. The jury was not instructed as to this aggravating circumstance.

4.   FLA. STAT. 921.141(5)(d)
     WHETHER THE CAPITAL FELONY WAS COMMITTED WHILE THE DEFENDANT WAS ENGAGED, OR WAS AN ACCOMPLICE, IN THE COMMISSION OF, OR AN ATTEMPT TO COMMIT, OR FLIGHT AFTER COMMITTING OR ATTEMPTING TO COMMIT, KIDNAPPING.

     The indictment charges felony murder, the underlying felonies being robbery with a firearm. The defendant was also engaged in the crime of kidnapping of Kimberly Hallock and Charles Flynn, Jr. when he murdered Charles Flynn, Jr. The defendant was found guilty of both kidnappings by the jury as a result of having forced Hallock and Flynn into Flynn's truck against their will and at gun point, and then driving them a distance of two to four miles where he held them at gun point until he murdered Charles Flynn, Jr.

     The state has established the existence of the aggravating circumstance beyond a reasonable doubt.

5.   FLA. STAT. 921.141(5)(e)
     WHETHER THE MURDER WAS COMMITTED FOR THE PURPOSE OF AVOIDING OR PREVENTING A LAWFUL ARREST OR EFFECTING AN ESCAPE FROM CUSTODY.

     This aggravating element was not present. The jury was not instructed as to this aggravating circumstance.

6.   FLA. STAT. 921.141(5)(f)
     WHETHER THE MURDER WAS COMMITTED FOR PECUNIARY GAIN.

     The state has established beyond a reasonable doubt that the defendant committed this crime for pecuniary gain. The defendant robbed the victim and Kim Hallock prior to kidnapping them and drove them to the citrus grove where he shot the victim, but these events were all part of a single episode.

     The defendants first and primary motive was the successful robbery of his victims. The taking of money from Hallock and Flynn was not an afterthought as described in Hill v. State, 549 So.2d 179 (Fla. 1989). There is more than an inference that the crime was committed for monetary gain as described in Simmons v. State, 419 So.2d 316 (Fla. 1982). The events described above occurred in a single episode which resulted in Flynn's death. Never did the defendant abandon his effort as did the defendant in Rogers v. State, 511 So.2d 526 (Fla.

5

RETURN TO: CRIMINAL LAW DEPARTMENT
R.C. WINSTEAD, JR.   001523
CLERK OF CIRCUIT COURT

1987).  See <u>Copeland v. State</u>, 457 So.2d 1012 (Fla. 1984), <u>Parker v. State</u>, 476 So.2d 134 (Fla. 1985).

This is not an improper doubling of the aggravating circumstance under Fla. Stat. 921.141(5)(d) because the defendant also committed two kidnappings. See <u>Bolender v. State</u>, 422 So.2d 833 (Fla. 1982); <u>Stevens v. State</u>, 419 So.2d 1058 (Fla. 1982); <u>Routly v. State</u>, 440 So.2d 1257 (Fla. 1983).

7.  FLA. STAT. 921.141(5)(g)
WHETHER THE CAPITAL FELONY WAS COMMITTED TO DISRUPT OR HINDER THE LAWFUL EXERCISE OF ANY GOVERNMENTAL FUNCTION OR THE ENFORCEMENT OF LAWS.

This aggravating element was not present.  The jury was not instructed as to this aggravating circumstance.

8.  FLA. STAT. 921.141(5)(h)
WHETHER THE MURDER WAS ESPECIALLY HEINOUS, ATROCIOUS, AND CRUEL.

The state urges the court to give weight to the fact that Charles Flynn, Jr. suffered for approximately an hour before dying.  This is not a permitted reason for finding this aggravating circumstance in most homicides resulting from gun shot wounds.  See <u>Teffeteller v. State</u>, 439 So.2d 840 (Fla. 1983), where the victim suffered hours following a shot gun wound to the stomach.  In <u>Miller v. State</u>, 476 So.2d 172 (Fla. 1985), the Supreme Court explained that application of this aggravating circumstance turns on the intent of the murderer, and not on the time a victim lingers while suffering which is "pure fortuity."

The victim was parked in a public place late at night with his girlfriend when he was approached by the defendant who was pointing a pistol at him.  He knew immediately of his likely peril as he pleaded with the defendant, "Hold on, wait a minute, man, put it down."  Ignoring his pleas the defendant forced him to his knees and then tied his hands behind his back.  Money was removed from his wallet and he was forced into his own truck and driven through the darkness to an isolated citrus grove.  He suffered agony from this point, knowing he was likely to die soon.  He observed the defendant assault his girlfriend and heard him say, "You are a slut and you'll do what I say or I'll blow your brains out."  Aware of his likely fate he attempted to save himself and rescue his girlfriend.  He was successful in the latter.

The state has proved the existence of this aggravating circumstance beyond a reasonable doubt.

6

BK3110PG2151

RETURN TO: CRIMINAL LAW
DEPARTMENT
R.C. WINSTEAD, JR.     001524
CLERK OF CIRCUIT COURT

9.  FLA. STAT. 921.141(5)(i)
    WHETHER THE MURDER WAS COMMITTED IN A COLD, CALCULATED, AND
    PREMEDITATED MANNER WITHOUT ANY PRETENSE OF MORAL OR LEGAL
    JUSTIFICATION.

    This aggravating element was not present.  The jury was not
    instructed as to this aggravating circumstance.


### MITIGATING CIRCUMSTANCES - FLA. STAT. 921.141(6)

1.  FLA. STAT. 921.141(6)(a)
    WHETHER DEFENDANT HAS NO SIGNIFICANT HISTORY OF PRIOR CRIMINAL
    ACTIVITY.

    This mitigating circumstance was not present.  The jury
    was not instructed as to this mitigating circumstance.


2.  FLA. STAT. 921.141(6)(b)
    WHETHER THE CAPITAL FELONY WAS COMMITTED WHILE THE DEFENDANT
    WAS UNDER THE INFLUENCE OF EXTREME MENTAL OR EMOTIONAL
    DISTURBANCE.

    This mitigating circumstance was not present.  The jury was
    not instructed as to this mitigating circumstance.


3.  FLA. STAT. 921.141(6)(c)
    WHETHER THE VICTIM WAS A PARTICIPANT IN THE DEFENDANT'S
    CONDUCT OR CONSENTED TO THE ACT.

    This mitigating circumstance was not present.  The jury
    was not instructed as to this mitigating circumstance.


4.  FLA. STAT. 921.141(6)(d)
    WHETHER THE DEFENDANT WAS AN ACCOMPLICE IN THE MURDER
    COMMITTED BY ANOTHER PERSON AND HIS PARTICIPATION WAS
    RELATIVELY MINOR.

    This mitigating circumstance was not present.  The jury
    was not instructed as to this mitigating circumstance.


5.  FLA. STAT. 921.141(6)(e)
    WHETHER THE DEFENDANT ACTED UNDER EXTREME DURESS OR UNDER THE
    SUBSTANTIAL DOMINION OF ANOTHER PERSON.

    This mitigating factor is usually applied to negate the

RETURN TO: CRIMINAL LAW
DEPARTMENT
R.C. WINSTEAD, JR.   001525
CLERK OF CIRCUIT COURT

BK3110PG2152

aggravating factor of "cold, calculated, premeditated, and without moral justification." In the instant case that aggravating factor does not exist. As used in this statute, "duress refers to external provocation such as imprisonment or the use of force or threats." Toole v. State, 479 So.2d 731, 734 (Fla. 1985).

In a heroic effort to save his girlfriend, Charles Flynn fired at the defendant. He did not, however, instigate the defendant's criminal episode which culminated in his own death. See generally Wilson v. State, 436 So.2d 908 (Fla. 1983). The defendant failed to establish the existence of this statutory mitigating circumstance by a preponderance of the evidence.

6.   FLA. STAT. 921.141(6)(f)
     WHETHER THE CAPACITY OF THE DEFENDANT TO APPRECIATE THE
     CRIMINALITY OF HIS CONDUCT OR TO CONFORM HIS CONDUCT TO THE
     REQUIREMENTS OF LAW WAS SUBSTANTIALLY IMPAIRED.

     This mitigating circumstance was not present. The jury
     was not instructed as to this mitigating circumstance.

7.   FLA. STAT. 921.141(6)(g)
     THE AGE OF THE DEFENDANT AT THE TIME OF THE CRIME.

     This mitigating circumstance was not present. The jury
     was not instructed as to this mitigating circumstance.


## NONSTATUTORY MITIGATING CIRCUMSTANCES

The defendant is allowed great latitude in presenting evidence which he feels constitutes nonstatutory mitigating factors. The court should consider these nonstatutory mitigating circumstances. See Lockett v. Ohio, 438 U.S. 586 (1978); Eddings v. Oklahoma, 455 U.S. 104 (1982); Cooper v. Dugger, 526 So.2d 900 (Fla. 1988). The defendant argues that the court should find the following nonstatutory mitigating circumstances present in this case, and they should be given weight by the court: 1) Saving the life of another; 2) Murder of mother, suicide of father;  3) Age at the

8

BK 3 1 1 0 PG 2 1 5 3

RETURN TO: CRIMINAL LAW
DEPARTMENT
R.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT

001526

time of commission of previous felony of violence; youthful offender treatment; and 4) The defendant is a father. The court has given the following consideration to these arguments.


1.   SAVING THE LIFE OF ANOTHER

The defendant established by a preponderance of the evidence that the defendant assisted his friend Damon Jones by pulling him from a lake. Mr. Jones could not swim and credits the defendant with saving his life. There is no evidence that the defendant's action placed his own safety in jeopardy. The court does not consider this a mitigating circumstance.


2.   MURDER OF MOTHER, SUICIDE OF FATHER

The defendant established by a preponderance of the evidence that when he was a teenager his father killed his mother by shooting her with a handgun, and then committed suicide by shooting himself. This occurred while the defendant was serving a prison term for robbery. There was no evidence presented as to the psychological effect this circumstance had upon the defendant who was thirty-one years old at the time he murdered Charles Flynn, Jr. The court does not consider these facts a mitigating circumstance.


3.   AGE AT THE TIME OF COMMISSION OF PREVIOUS FELONY OF VIOLENCE; YOUTHFUL OFFENDER TREATMENT

The defendant established by a preponderance of the evidence that the defendant was eighteen years old at the time he committed the crime of robbery in the State of New York. (The offense occurred April 18, 1976, and the defendant's date of birth is September 11, 1957.) The defendant also established that he was treated as a youthful offender by the State of New York. The court does not consider this a mitigating circumstance.


4.   DEFENDANT IS A FATHER

The defendant is the biological father of a son between five and six years old. The defendant has not lived with his son since the child was just over one year. Since then he has taken the child to the park and "a number of times" spent the night with him. The court has considered the defendant's relationship with his son which was described by the

9

BK3110PG2154

RETURN TO: CRIMINAL LAW
DEPARTMENT
R.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT
001527

defendant's sister as loving.  The court, however, does not consider these facts to constitute a mitigating circumstance.

## SUMMARY

After weighing the evidence the court finds four aggravating circumstances to exist.  The court further finds that no statutory mitigating circumstances exist nor any nonstatutory mitigating circumstances.    Aggravating    circumstances    are    found    to substantially outweigh mitigating circumstances.  In reaching this conclusion  the  court  has  not  used  the  score  card  approach proscribed in <u>Dixon v. State</u>, 283 So.2d 1 (Fla. 1973).

## SENTENCE

Crosley  Alexander  Green,  the  court  having  given  you  an opportunity  to  be  heard  and  show  legal  cause  why  judgment  and sentence  should  not  now  be  imposed  and  to  offer  matters  in mitigation,  and  no  legal  cause  having  been  shown  to  preclude imposition of judgment and sentence, you are hereby

**ADJUDGED** guilty of the crime of First Degree Murder for the unlawful killing of Charles Flynn, Jr., you are, .

THEREFORE,  sentenced  to  be  put  to  death  in  the  manner  and means  provided  by  law  (Section  922.10,  Florida  Statutes,  1987). May God have mercy on your soul.

IT  IS  YOUR  RIGHT  TO  APPEAL  WITHIN  THIRTY  (30)  DAYS  FROM  THE DATE OF THIS PROCEEDING HELD IN THIS COURT.   YOU ARE ENTITLED TO

10

BK 3110 PG 2155

RETURN TO: CRIMINAL LAW
DEPARTMENT
R.C. WINSTEAD, JR. 001528
CLERK OF CIRCUIT COURT

THE ASSISTANCE OF AN ATTORNEY IN PREPARING AND FILING YOUR APPEAL.

UPON A SHOWING THAT YOU ARE ENTITLED TO AN ATTORNEY AT THE EXPENSE

OF THE STATE, ONE WILL BE APPOINTED FOR YOU.

DONE AND ORDERED in Melbourne, Brevard County, Florida, this

_8th_ day of _FEBRUARY_ , 1991.

JOHN ANTOON II-Circuit Judge

Copies furnished to:

Office of the State Attorney
John R. Parker, Defense Attorney

RETURN TO: CRIMINAL LAW
DEPARTMENT
R.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT

11

001529

# IN THE CIRCUIT COURT, EIGHTEENTH JUDICIAL CIRCUIT,
## IN AND FOR BREVARD COUNTY, FLORIDA

☐ PROBATION VIOLATOR
☐ COMMUNITY CONTROL VIOLATOR
☐ RETRIAL
☐ RESENTENCE
☐ AMENDED AS TO _____

CASE NO. 89-4942-CFA

**JUDGMENT AND SENTENCE/MINUTES**

**STATE OF FLORIDA**

FILED IN OPEN COURT THIS 8

DAY OF February, 19 91.

TIME: 4:00 pm. M. Moon

DEPUTY CLERK

**- vs -**

Crosley Alexander Green
Defendant

Court was opened with the Honorable John Antoon II presiding, and

attendance: State Attorney C. White, P. Williams; Trial Clerk D. Moon

Court Reporter C. Angell

The Defendant, Crosley Alexander Green, being personally before the Court

represented by John R. Parker, his attorney of record, and having

*(Check* ☑ Been tried and found guilty of the following crime(s)
*Applicable* ☐ Entered a plea of guilty to the following crime(s)
*Provision)* ☐ Entered a plea of nolo contendere to the following crime(s)

| Count | Crime | Offense Statute Number(s) | Degree of Crime |
|-------|-------|---------------------------|-----------------|
| II | Robbery with Firearm | 812.13(1), 812.13(2)(a) | 1 F pbL |
| III | Robbery with Firearm | 812.13(1), 812.13(2)(a) | 1 F pbL |
| IV | Kidnapping | 787.01(1)(a)2, 787.01(1)(a)3 | 1 F pbL |
| V | Kidnapping | 787.01(1)(a)2, 787.01(1)(a)3 | 1 F pbL |

RETURN TO: CRIMINAL LAW
DEPARTMENT
B.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT

☐ STATE NOLLE PROSEQUI COUNT(S) _____
☐ COURT ENTERED JUDGEMENT OF ACQUITTAL AS TO COUNT(S) _____
☐ THE PROBATION PREVIOUSLY ORDERED IN THIS CASE IS REVOKED.
☐ THE COMMUNITY CONTROL PREVIOUSLY ORDERED IN THIS CASE IS REVOKED.
☐ THE PRIOR ADJUDICATION OF GUILT IN THIS CASE IS CONFIRMED.
  and no cause having been shown why the Defendant should not be adjudicated guilty.
☑ IT IS ORDERED THAT the Defendant is hereby ADJUDICATED GUILTY of the above crime(s).
☐ IT IS ORDERED THAT ADJUDICATION OF GUILT OF THE ABOVE CRIMES BE WITHHELD.

DISTRIBUTION:
Original-Court File
-Defendant
-Probation & Parole

-Defense Attorney/PD
-Dept. of Corrections (2)
-State Attorney

BK 31 PG 2139
3110

91 FEB 22 AM 8:43

CLERK 116                    Page 1 of    7

001530

**FINGERPRINT**
**FORM**

DEFENDANT Green, Crosley a

CASE NO. 89-4942-CFA

| 1. R. Thumb | 2. R. Index | 3. R. Middle | 4. R. Ring | 5. R. Little |
|---|---|---|---|---|
| | | | | |
| 6. L. Thumb | 7. L. Index | 8. L. Middle | 9. L. Ring | 10. L. Little |
| | | | | |

**FINGERPRINTS OF DEFENDANT**

Fingerprints taken by: Roy Osborne

Name

Deputy/Bailiff

Title

I HEREBY CERTIFY that the above and foregoing are the fingerprints of the

Defendant Crosley Alexander Green    B    ,    M    , DOB: 9/11/57

Race    Sex

SS# 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 and that they were placed thereon by said Defendant in

my presence in Open Court this date.

DONE AND ORDERED in Open Court in Brevard County Florida, this 8 day of

February, 19 91.

JUDGE

RETURN TO: CRIMINAL LAW
DEPARTMENT
R.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT

BK3110PG2140

001531

CLERK 122

Page 2 of 7

# SENTENCE

DEFENDANT _Green, Crosley A._

CASE NO. _89-4942-CFA_

(AS TO COUNT _II_ )

The Defendant, being personally before this Court, accompanied by his attorney, _John R._
_Parker_ , and having been adjudicated guilty herein, and the Court having given the Defendant an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why he should not be sentenced as provided by law, and no cause being shown,

☐ and the Court having on _____ deferred imposition of sentence until this date.             (date)

(Check applicable provision)   ☐ and the Court having previously entered a judgment in this case on the defendant now resentences the defendant.

☐ and the Court having placed the Defendant on Probation/Community Control and having subsequently revoked the Defendant's Probation/Community Control.

## IT IS THE SENTENCE OF THE COURT that:

☐ The Defendant pay a fine of $_____ , plus $_____ as the surcharge required by F.S. 960.25.

☒ The Defendant is hereby committed to the custody of the Department of Corrections.

☐ The Defendant is hereby committed to the custody of the Sheriff of Brevard County.

☐ The Defendant is sentenced as a youthful offender in accordance with F.S. 958.04.

**To be imprisoned** (check one; unmarked sections are inapplicable)

☐ For a term of Natural Life.

☒ For a term of _twenty-seven (27) years_

☐ Said SENTENCE SUSPENDED for a period of _____ subject to conditions set forth in this Order.

☐ However, after serving a period of _____ imprisonment in Department of Corrections, the balance of such sentence shall be suspended and the Defendant shall be placed on ☐ PROBATION ☐ COMMUNITY CONTROL for a period of _____ under the supervision of the Department of Corrections according to the terms and conditions of ☐ probation ☐ community control set forth in this order.

_RETURN TO: CRIMINAL LAW DEPARTMENT_
_R.C. WINSTEAD, JR._
_CLERK OF CIRCUIT COURT_

## SPECIAL PROVISIONS

By appropriate notation, the following provisions apply to the sentence imposed in this section:

☒ **FIREARM — 3 year mandatory minimum**   It is further ordered that the 3 year minimum imprisonment provisions of F.S. 775.087(2) are hereby imposed for the sentence specified in this count, as the Defendant possessed a firearm.

☐ **DRUG TRAFFICKING — mandatory minimum**   It is further ordered that the _____ year minimum imprisonment provisions of F.S. 893.135 (1)( )( ) are hereby imposed for the sentence specified in this count.

☐ **Habitual Offender**   The Defendant is adjudged a habitual offender and has been sentenced to an extended term in this sentence in accordance with the provisions of F.S. 775.084(4)(a). The requisite findings by the court are set forth in a separate order or stated on the record in open court.

☒ **JAIL CREDIT**   It is further ordered that the Defendant shall be allowed a total of _616 days_ credit for such time as he has been incarcerated prior to imposition of this sentence.

☐ **PRISON CREDIT**   It is further ordered that the Defendant be allowed credit for all time previously served on this count in the Department of Corrections prior to resentencing.

☐ **CAPITAL OFFENSE — 25 year mandatory minimum**   It is further ordered that the Defendant shall be required to serve no less than 25 years before becoming eligible for parole in accordance with the provisions of F.S. 775.082(1).

☐ **Consecutive/Concurrent**   It is further ordered that the sentence imposed for this count shall run ☐ consecutively to ☐ concurrent with (check one) the sentence set forth in count _____ above.

# SENTENCE

DEFENDANT _Green Crosley A_

CASE NO. _89-4942-CFA_

(AS TO COUNT ___II___ )

The Defendant, being personally before this Court, accompanied by his attorney, _John R. Parker_
_____ , and having been adjudicated guilty herein, and the Court having given the Defendant an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why he should not be sentenced as provided by law, and no cause being shown,

☐ and the Court having on _____ deferred imposition of sentence
until this date.          (date)

(Check applicable provision)

☐ and the Court having previously entered a judgment in this case on the defendant now resentences the defendant.

☐ and the Court having placed the Defendant on Probation/Community Control and having subsequently revoked the Defendant's Probation/Community Control.

**IT IS THE SENTENCE OF THE COURT that:**

☐ The Defendant pay a fine of $_____ , plus $_____ as the surcharge required by F.S. 960.25.

☒ The Defendant is hereby commited to the custody of the Department of Corrections.

☐ The Defendant is hereby committed to the custody of the Sheriff of Brevard County, Florida.

☐ The Defendant is sentenced as a **youthful offender** in accordance with F.S. 958.04.

**To be imprisoned** (check one; unmarked sections are inapplicable)

  ☐ For a term of Natural Life.

  ☒ For a term of _twenty-seven (27) years_

  ☐ Said SENTENCE SUSPENDED for a period of _____ subject to conditions set forth in this Order.

    ☐ However, after serving a period of _____ imprisonment in Department of Corrections, the balance of such sentence shall be suspended and the Defendant shall be placed on ☐ PROBATION ☐ COMMUNITY CONTROL for a period of _____ under the supervision of the Department of Corrections according to the terms and conditions of ☐ probation ☐ community control set forth in this order.

RETURN TO: CRIMINAL LAW DEPARTMENT
R.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT

## SPECIAL PROVISIONS

By appropriate notation, the following provisions apply to the sentence imposed in this section:

☒ **FIREARM — 3 year mandatory minimum**   It is further ordered that the 3 year minimum imprisonment provisions of F.S. 775.087(2) are hereby imposed for the sentence specified in this count, as the Defendant possessed a firearm.

☐ **DRUG TRAFFICKING — mandatory minimum**   It is further ordered that the _____ year minimum imprisonment provisions of F.S. 893.135 (1)( )( ) are hereby imposed for the sentence specified in this count.

☐ **Habitual Offender**   The Defendant is adjudged a habitual offender and has been sentenced to an extended term in this sentence in accordance with the provisions of F.S. 775.084(4)(a). The requisite findings by the court are set forth in a separate order or stated on the record in open court.

☒ **JAIL CREDIT**   It is further ordered that the Defendant shall be allowed a total of _661 days_ credit for such time as he has been incarcerated prior to imposition of this sentence.

☐ **PRISON CREDIT**   It is further ordered that the Defendant be allowed credit for all time previously served on this count in the Department of Corrections prior to resentencing.

☐ **CAPITAL OFFENSE — 25 year mandatory minimum**   It is further ordered that the Defendant shall be required to serve no less than 25 years before becoming eligible for parole in accordance with the provisions of F.S. 775.082(1).

☒ **Consecutive/Concurrent**   It is further ordered that the sentence imposed for this count shall run ☐ consecutive to ☒ concurrent with (check one) the sentence set forth in count _II_ above.

BK 3 | 1 0PG 2 1 4 2

Page _4_ of _7_

#011-0487 (R) 2
32-CC

001533

# SENTENCE

DEFENDANT **Green Crosley Q**

CASE NO. **89-4942-CFA**

(AS TO COUNT **IV** )

The Defendant, being personally before this Court, accompanied by his attorney, **John R. Parker**
_____ , and having been adjudicated guilty herein, and the Court having given the Defendant an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why he should not be sentenced as provided by law, and no cause being shown,

☐ and the Court having on _____ deferred imposition of sentence until this date. **(date)**

(Check applicable provision)

☐ and the Court having previously entered a judgment in this case on the defendant now resentences the defendant.

☐ and the Court having placed the Defendant on Probation/Community Control and having subsequently revoked the Defendant's Probation/Community Control.

## IT IS THE SENTENCE OF THE COURT that:

☐ The Defendant pay a fine of $_____ , plus $_____ as the surcharge required by F.S. 960.25.

☒ The Defendant is hereby committed to the custody of the Department of Corrections.

☐ The Defendant is hereby committed to the custody of the Sheriff of Brevard County, Florida.

☐ The Defendant is sentenced as a youthful offender in accordance with F.S. 958.04.
**To be imprisoned** (check one; unmarked sections are inapplicable)

RETURN TO: CRIMINAL DEPARTMENT
R.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT

☐ For a term of Natural Life.

☒ For a term of **twenty seven (27) years**

☐ Said SENTENCE SUSPENDED for a period of _____ subject to conditions set forth in this Order.

☐ However, after serving a period of _____ imprisonment in Department of Corrections, the balance of such sentence shall be suspended and the Defendant shall be placed on ☐ PROBATION ☐ COMMUNITY CONTROL for a period of _____ under the supervision of the Department of Corrections according to the terms and conditions of ☐ probation ☐ community control set forth in this order.

## SPECIAL PROVISIONS

By appropriate notation, the following provisions apply to the sentence imposed in this section:

☐ **FIREARM — 3 year mandatory minimum**   It is further ordered that the 3 year minimum imprisonment provisions of F.S. 775.087(2) are hereby imposed for the sentence specified in this count, as the Defendant possessed a firearm.

☐ **DRUG TRAFFICKING — mandatory minimum**   It is further ordered that the _____ year minimum imprisonment provisions of F.S. 893.135 (1)( )( ) are hereby imposed for the sentence specified in this count.

☐ **Habitual Offender**   The Defendant is adjudged a habitual offender and has been sentenced to an extended term in this sentence in accordance with the provisions of F.S. 775.084(4)(a). The requisite findings by the court are set forth in a separate order or stated on the record in open court.

☒ **JAIL CREDIT**   It is further ordered that the Defendant shall be allowed a total of **1616 days** credit for such time as he has been incarcerated prior to imposition of this sentence.

☐ **PRISON CREDIT**   It is further ordered that the Defendant be allowed credit for all time previously served on this count in the Department of Corrections prior to resentencing.

☐ **CAPITAL OFFENSE — 25 year mandatory minimum**   It is further ordered that the Defendant shall be required to serve no less than 25 years before becoming eligible for parole in accordance with the provisions of F.S. 775.082(1).

☒ **Consecutive/Concurrent**   It is further ordered that the sentence imposed for this count shall run ☐ consecutive to ☒ concurrent with (check one) the sentence set forth in count **IV** above.

#011-0487 (H) 2
32-CC

Page **5** of **7** BK 3 1 1 0 PG 2 1 4 3   001534

# SENTENCE

DEFENDANT _Green Crosley a_

CASE NO. _89-4942-CFA_

(AS TO COUNT _IV_ )

The Defendant, being personally before this Court, accompanied by his attorney, _John R Parker_
_____ , and having been adjudicated guilty herein, and the Court having given the Defendant an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why he should not be sentenced as provided by law, and no cause being shown,

☐ and the Court having on _____ deferred imposition of sentence
until this date.                    (date)

(Check applicable provision)

☐ and the Court having previously entered a judgment in this case on the defendant now resentences the defendant.

☐ and the Court having placed the Defendant on Probation/Community Control and having subsequently revoked the Defendant's Probation/Community Control.

## IT IS THE SENTENCE OF THE COURT that:

☐ The Defendant pay a fine of $_____ , plus $_____ as the surcharge required by F.S. 960.25.

☒ The Defendant is hereby commited to the custody of the Department of Corrections.

☐ The Defendant is hereby committed to the custody of the Sheriff of Brevard County, Florida.

☐ The Defendant is sentenced as a **youthful offender** in accordance with F.S. 958.0 RETURN TO: CRIMINAL LAW

**To be imprisoned** (check one; unmarked sections are inapplicable)

☐ For a term of Natural Life.

☒ For a term of _twenty-seven (27) years_

☐ Said SENTENCE SUSPENDED for a period of _____ subject to conditions set forth in this Order.

DEPARTMENT
R.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT

☐ However, after serving a period of_____ imprisonment in Department of Corrections, the balance of such sentence shall be suspended and the Defendant shall be placed on ☐ PROBATION ☐ COMMUNITY CONTROL for a period of _____ under the supervision of the Department of Corrections according to the terms and conditions of ☐ probation ☐ community control set forth in this order.

## SPECIAL PROVISIONS

By appropriate notation, the following provisions apply to the sentence imposed in this section:

☐ **FIREARM — 3 year mandatory minimum**   It is further ordered that the 3 year minimum imprisonment provisions of F.S. 775.087(2) are hereby imposed for the sentence specified in this count, as the Defendant possessed a firearm.

☐ **DRUG TRAFFICKING — mandatory minimum**   It is further ordered that the_____ year minimum imprisonment provisions of F.S. 893.135 (1)( )( ) are hereby imposed for the sentence specified in this count.

☐ **Habitual Offender**   The Defendant is adjudged a habitual offender and has been sentenced to an extended term in this sentence in accordance with the provisions of F.S. 775.084(4)(a). The requisite findings by the court are set forth in a separate order or stated on the record in open court.

☒ **JAIL CREDIT**   It is further ordered that the Defendant shall be allowed a total of _1616 days_ credit for such time as he has been incarcerated prior to imposition of this sentence.

☐ **PRISON CREDIT**   It is further ordered that the Defendant be allowed credit for all time previously served on this count in the Department of Corrections prior to resentencing.

☐ **CAPITAL OFFENSE — 25 year mandatory minimum**   It is further ordered that the Defendant shall be required to serve no less than 25 years before becoming eligible for parole in accordance with the provisions of F.S. 775.082(1).

☒ **Consecutive/Concurrent**   It is further ordered that the sentence imposed for this count shall run ☐ consecutive to ☒ concurrent with (check one) the sentence set forth in count _IV_ above.

#011-0487 (R) 2
32-CC

Page _6_ of _7_   BK 3 1 1 0 PG 2 1 4 5   001535

| STATE OF FLORIDA                     vs. | SIGNATURE        PAGE |
|---|---|
| _Crosley Alexander Green_ | _89-4942 CFA_ |
| **DEFENDANT** | **CASE NUMBER** |

*Consecutive/Concurrent*
*(As to other convictions)*

It is further ordered that the composite term of all sentences imposed for the counts specified in this order shall run ☑ consecutive to ☐ concurrent with (check one) the following:

☐   Any active sentence being served.

☑   Specific sentences: _Death Penalty received_
_in Ct. I_

In the event the above sentence is to the Department of Corrections, the Sheriff of Brevard County, Florida is hereby ordered and directed to deliver the Defendant to the Department of Corrections together with a copy of this Judgment and Sentence.

The Defendant in Open Court was advised of his right to appeal from this Sentence by filing notice of appeal within thirty days from this date with the Clerk of this Court, and the Defendant's right to the assistance of counsel in taking said appeal at the expense of the State upon showing of indigency.

In imposing the above sentence, the Court further recommends _____

THE COURT HEREBY ORDERS THE DEFENDANT:

☐ released on Probation;

☐ released on Community Control;

☑ remanded to the Brevard County Detention Facility;

DONE AND ORDERED in Open Court in Brevard County, Florida, this _____ day
of ____Feb____, 19_91_.

RETURN TO: CRIMINAL LAW
DEPARTMENT
R.C. WINSTEAD, JR.
CLERK OF CIRCUIT COURT

_____
JUDGE

I acknowledge receipt of a certified copy of this Order, and that the conditions have been explained to me. I will immediately report to the Probation & Parole Office for further instructions.

DATE:_____      _____
PROBATIONER/COMMUNITY CONTROLEE

INSTRUCTED BY: _____

Page _7_ of _7_

# CLOSED
# MANDATE

# SUPREME COURT OF FLORIDA

*To the Honorable, the Judges of the:*

Circuit Court in and for Brevard County, Florida

*WHEREAS, in that certain cause filed in this Court styled:*

CROSLEY ALEXANDER GREEN v. STATE OF FLORIDA

FILED IN OFFICE
'94 OCT -3 PM 12: 05
SANDY CRAWFORD
CLERK OF CIR. CT.
BREVARD CO. FLA.

*Case No.:* 77,402

*Your Case No.:* 89-4942-CF-A

*The attached opinion was rendered on:* July 7, 1994

*YOU ARE HEREBY COMMANDED that further proceedings be had in accordance with said opinion, the rule of this Court and the laws of the State of Florida.*

*WITNESS the Honorable Stephen H. Grimes, Chief Justice of the Supreme Court of Florida and the Seal of said Court at Tallahassee, the Capital, on this 28th day of September, 1994.*



_____
*Clerk of the Supreme Court of Florida*

001537

350

CLOSED

# Supreme Court of Florida

MONDAY, AUGUST 29, 1994

CROSLEY ALEXANDER GREEN,          *
                                  *
      Appellant,                  *
                                  *
v.                                *   CASE NO. 77,402
                                  *
STATE OF FLORIDA,                 *   Circuit Court No. 89-4942-CF-A
                                  *   (Brevard)
      Appellee.                   *
                                  *
* * * * * * * * * * * * * *  *


      Appellant's Motion for Rehearing filed in the above cause is
hereby denied.

GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD,
Senior Justice, concur



FILED IN OFFICE
94 OCT -3 PH 12:05
SANDY CRAWFORD
CLERK OF CIR. CT.
BREVARD CO. FLA.

A True Copy

TEST:
By:
Deputy Clerk
Sid J.
Clerk,

TC
cc:  Hon. Raymond C. Winstead, Jr.,
        Clerk
     Hon. John Antoon, II, Judge

     Mr. Michael S. Becker
     Ms. Margene A. Roper

001538
351

Vol 14 + B
w/ EAH

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY,
FLORIDA.

STATE OF FLORIDA,
    Plaintiff,

CASE NO.: 89-04942-CF-A

vs.

CROSLEY A. GREEN,
    Defendant.
_____/

NOTICE TO APPEAR
FOR HEARING

TO:  John Mosher, Esquire      Chris White, Asst. State Attorney
     Capital Collateral Rep.    Office of the State Attorney
     Middle Region           100 First Street
     3801 Corporex Dr. Ste. 210  Sanford, Florida 32771
     Tampa, Florida 33169-1130
-----------------------------------------------------------------

    Notice is hereby given that a Status Hearing has been scheduled by this Court in the above styled cause on Thursday, December 10, 1998 at 1:15 p.m. at the Moore Justice Center, 2825 Judge Fran Jamieson Way, Courtroom 4C, Viera, Florida 32940. **IF ANY PARTY DESIRES TO APPEAR BY TELEPHONE, THEY MUST CONTACT THE JUDGE'S OFFICE AT (407) 617-7283 NO LATER THAN 12:00 NOON, DECEMBER 8, 1998 TO PROVIDE THE TELEPHONE NUMBER THEY CAN BE REACHED AT. IF YOU HAVE NOT CONTACTED THIS OFFICE, YOU WILL BE EXPECTED TO APPEAR IN PERSON.**

    **DONE AND ORDERED** in Viera, Brevard County, Florida this 17 day of November, 1998.

TONYA RAINWATER
Circuit Court Judge

4/7

0015 39

Copies to:

Judy Taylor Rush and Kenneth Nunnelly
Assistant Attorney Generals
444 Seabreeze Blvd., Suite 500
Daytona Beach, Florida 32118

**ATTN:PERSONS WITH DISABILITIES.   If you are a person with a
disability who needs accommodation in order to participate in this
proceeding, you are entitled, at no cost to you, to the provision of
certain assistance.   Please contact Court Administration at 2825 Judge
Fran Jamieson Way, 3rd Floor, Viera, FL 32940-8006, (407) 633-2171 within
2 working days of your receipt of this notice; if you are hearing or
voice impaired, call 1-800-955-8771.**

001540

**CLOSED**

☐ AMENDED
BREVARD COUNTY, FLORIDA
DATE: **12 10 98**

**COURT MINUTES/ORDER OF**

| DEFENDANT | CASE NUMBER | JUDGE |
|---|---|---|
| GREEN, CROSLEY ALEXANDER | 89-04942CFA | TR |

RESERVED FOR RECORDING

**CHARGES**

TAPE    LOG

*Status*

| | |
|---|---|
| CLERK | M LEVSEN |
| CLERK | |
| REPORTER | Navarro G. |
| BAILIFF | T MONTOURI |
| BAILIFF | J BROWN |
| DEFENSE COUNSEL | WOLVERTON REYNOLDS |
| STATE ATTORNEY | ARTHUR JENNINGS White |
| PTR REPRESENTATIVE | LORIS LYNCH |

**AMENDED CHARGE:**
☐ STATE   ☐ COURT

**DEFENDANT**

| PRESENT | NOT PRESENT ✗ |
|---|---|
| WITHOUT COUNSEL | COUNSEL PRESENT IN DEFENDANT'S BEHALF |
| WITH COUNSEL | |

ADVISED OF RIGHTS AND CHARGES

| WAIVED SPEEDY TRIAL | PRE-TRIAL DIVERSION WAIVER SPEEDY TRIAL |
|---|---|

**WARRANTS**

| DEPUTY | PRESENT & |
|---|---|
| FILED LOCAL AFFIDAVIT & WARRANT | |
| ADVISED COURT DEFENDANT RECEIVED | |
| BY | AUTHORITIES |
| ON | |
| TO SERVE AS A HOLD UNTIL LOCAL CHARGES ARE DISMISSED OR UNTIL SCHEDULED BOND POSTED | |
| ADVISED FOREIGN COURT WILL NOT EXTRADITE | |
| ADVISED GOVERNOR'S WARRANT SERVED | |
| DEFENDANT SIGNED WAIVER OF EXTRADITION | |

**FAILURE TO APPEAR**

COURT ORDERED

| BENCH WARRANT | INSTANTER | ISSUE OTSC |
|---|---|---|
| BOND AMOUNT $ | | Cash or Surety |
| JUVENILE BENCH WARRANT | | |
| CAPIAS | SUSPEND D.L. | NO ROR OR PTR |

**ATTORNEY**

DEFENDANT DETERMINED

| INDIGENT | PARTIALLY INDIGENT | NON-INDIGENT |
|---|---|---|
| COURT APPOINTED | COST PURPOSES ONLY | |
| PUBLIC DEFENDER | APPEAL PURPOSES ONLY | |
| CONFLICT ATTORNEY | | |

DEFENDANT WAIVED COUNSEL

COURT TOOK NO ACTION AS TO COUNSEL

COUNSEL RELIEVED FROM ANY FURTHER REPRESENTATION

COURT WAS ADVISED DEFENDANT WILL RETAIN COUNSEL

NOTICE OF APPEARANCE, WAIVER OF ARRAIGNMENT, AND DEMAND FOR JURY TRIAL FILED

NOTICE OF APPEAL FILED IN OPEN COURT

NOA/CAF NOT FILED AS OF THIS DATE

**FAILURE TO APPEAR WILL RESULT IN A BENCH WARRANT BEING ISSUED FOR YOUR ARREST**

**STATE ACTION**

| NOLLE PROSEQUI | COUNT(S) |
|---|---|
| PRESENTED NO EVIDENCE | COUNT(S) |
| NOTICE OF NO INFORMATION | COUNT(S) |

| WRITTEN | ORAL |
|---|---|
| REDUCED TO MISDEMEANOR | |
| UPGRADED TO FELONY | |

**PLEA**

| NOT GUILTY | NOLO CONTENDERE | GUILTY |
|---|---|---|
| ORIGINAL WITHDRAWN | IN ABSENTIA | |
| LESSER INCLUDED OFFENSE | | |

**VERDICT**

JURY RETURNED WITH VERDICT OF

| GUILTY | NOT GUILTY |
|---|---|

COURT FOUND DEFENDANT TO BE

| GUILTY | NOT GUILTY |
|---|---|

**COURT ACTION**

| ACCEPTED PLEA | ARRAIGNED |
|---|---|
| ADJUDICATED GUILTY | Found Defendant in Violation of Probation/Community Control |
| PREVIOUSLY | |
| WITHHELD ADJUDICATION OF GUILT | Conditions |
| | FOUND DEFENDANT IN CONTEMPT OF COURT |
| DISMISSED (CTS) | |
| SENTENCE APPLIES TO ALL COUNTS | SUSPEND ORIGINAL |
| | FINE | CS |
| ADVISED RIGHT TO APPEAL W/IN 30 DAYS | PAYABLE INFRACTION REPORT TO TRAFFIC DEPT. |

**LICENSE ACTION**

| REVOKED | SUSPENDED |
|---|---|

| MONTHS | YEARS |
|---|---|

RE-EXAMINATION REQUIRED

BY COURT RE:

CONFISCATED BY COURT

**LIBERTY STATUS**

| CASH | ORDER |
|---|---|
| SURETY | ROR |
| UNSECURED SIGNATURE | PTR |
| SECURED SIGNATURE | SUMMONS |
| CITATION | NOTICE TO APPEAR |
| DISCHARGED | CANCEL BENCH WARRANT |
| BENCH WARRANT/CAPIAS RECALLED ON: | |
| DEPUTY NOTIFIED | |
| BY CLERK | |

**NEXT COURT APPEARANCE**

| SECOND APPEARANCE | VOP ARRAIGNMENT |
|---|---|
| CONTROL FUGITIVE WARRANT | ADVERSARY PRELIMINARY HEARING |
| VOP HEARING | NON JURY TRIAL |
| HEARING | CIVIL INFR HEARING | ARRAIGNMENT DEFERRED |
| PLEA | SENTENCING |
| STATUS CONFERENCE | DOCKET SOUNDING (JURY TRIAL) |
| CONTINUED BY | CRIMINAL PROCEEDINGS |
| | COURT | STATE | PD/ATTY |

| REASON | |
|---|---|
| PREVIOUSLY SET | |

| DATE | | TIME |
|---|---|---|
| | VIERA | TITUSVILLE |
| | MELBOURNE | SHARPES |

| DIVISION | JUDGE |
|---|---|

ACKNOWLEDGED

_____
(DEFENDANT/ATTORNEY SIGNATURE)

i, hereby certify that a copy hereof has been sent to:

**BOND INFO OUT OF CUSTODY**

NUMBER-TYPE-AMOUNT

0

SATISFIED/RELEASED

FORFEIT IN FULL SATISFACTION (CASH BOND)

SURETY/CASH BOND FORFEITED

| FORFEITURE DATED | DISCHARGED |
|---|---|

DEDUCT $

REFUND BALANCE TO DEPOSITOR

BALANCE OF FINE TO BE PAID

**CHARGES / CASE # CHANGES**

ORIGINAL CHARGES LISTED ON THE ARREST AFFIDAVIT (923.01) HAVE BEEN CHANGED

FORMER CASE #

001541

*IF YOU ARE DISABLED, PLEASE SEE REVERSE SIDE OF DEFENDANT'S COPY FOR INFORMATION REGARDING PROCEEDINGS.

## COURT MINUTES / ORDER
BREVARD COUNTY, FLORIDA - PAGE 2

| DEFENDANT | DATE | CASE NUMBER |
|---|---|---|
| GREEN, CROSLEY ALEXANDER | | 89-04942CFA |

RESERVED FOR RECORDING

### JAIL

| | | |
|---|---|---|
| SENTENCED TO: | DAY(S) DETENTION CENTER | |
| | DAY(S) CREDIT FOR TIME SERVED | |
| | DAY(S) SUSPENDED | |
| CONCURRENT W/ | | |
| ANY PENDING SENTENCE | | |
| CONSECUTIVE W/ | | |
| ANY PENDING SENTENCE | | |
| COMMENCING | | |
| WEEKENDS/FARM (See Supplemental Order) | | |
| NO GAIN TIME | | |

☐ **PROBATION**
☐ **COMMUNITY CONTROL**

| SUPERVISED | UNSUPERVISED |
|---|---|
| PERIOD OF | YEARS/MONTHS |
| CONCURRENT W/ | |
| CONSECUTIVE W/ | |

### CONDITIONS

☐ Probationary ☐ Non-Probationary ☐ Bond

| ALL STANDARD CONDITIONS | COMMUNITY SERVICE ____ HRS W/IN ____ MOS |
|---|---|
| RESTITUTION (SEE ORDER) | REPORT TO PROB BY |
| RESERVED | |
| AA/NA _____ TIMES WEEKLY/MONTHLY | No Possession of Alcohol |
| Pay all Outstanding Fines | No Drinking & Driving |
| No consumption of Alcohol | OBTAIN VALID DL w/in _____ |
| Vehicle Impoundment (See Order) | No Driving w/o valid DL |
| | Cost of Supervision Fees Waived |
| ATTEND AND COMPLETE SELF-IMPROVEMENT SCHOOL (SEE ATTACHMENT) WITHIN _____ DAYS | |
| ABIDE BY ALL LAWS | |
| MAKE ALL COURT APPEARANCES | |
| REMAIN IN BREVARD COUNTY | |
| REMAIN IN CONTACT WITH ATTORNEY | |
| NO CONTACT WITH VICTIM(S): | |
| CURFEW _____ M TO _____ M | |
| SEE REMARKS | |
| HOUSE ARREST _____ DAYS | |

### Status of
☐ Probation ☐ Community Control

| REVOKED | MODIFIED |
|---|---|
| REINSTATED | |
| SAME TERMS AND CONDITIONS AS PREVIOUSLY IMPOSED | |
| TERMINATED | |
| Satisfactorily | Unsatisfactorily |
| Cancel Cost of Supervision Fees | Cancel Schools |
| Fines and Court Costs to Remain Outstanding | |
| No Outstanding Conditions | |

### ORDER OF THE COURT

| PROBABLE CAUSE | NO PROBABLE CAUSE |
|---|---|
| NO IMPRISONMENT STATEMENT | |
| FINGERPRINTED IN OPEN COURT | |
| PRE-SENTENCE INVESTIGATION | |
| Pre-plea | Full Form | Short Form |
| State Guideline Sheet Only | DJJ Comments |
| **EVALUATION ORDERED** | File Copy w/Court |
| PSYCHIATRIC | MEDICAL |
| 24 HOUR SCREENING | DETENTION FACILITY |
| FORENSICS | TASC |
| MENTAL HEALTH CENTER SHERIFF TO TRANSPORT | CIRCLES OF CARE |
| | SEE REMARKS |
| STD | HIV | HEPATITIS |

### BOND INFORMATION IN CUSTODY

| SET AT | REDUCED TO | INCREASED TO |
|---|---|---|
| $ | | CASH |
| | | SURETY |
| SECURED SIGNATURE | UNSECURED SIGNATURE |
| PERSONAL SURETY: | |

**QUARTERMAN RELEASE**
If the defendant violates ANY of the release conditions listed, he/she agrees to be sentenced to the maximum sentence in the above styled case.

| ROR | |
|---|---|
| State did not file information within 33 days | |
| NO ACTION TAKEN AS TO BOND AMOUNT | |
| RELEASED/DISCHARGED | |
| NO BOND | |
| UNTIL FURTHER ORDER OF COURT | |
| DUE TO NATURE OF OFFENSE | |
| UNTIL EVALUATION COMPLETE | |
| REMANDED | AS TO CHARGES ON ARREST AFFIDAVIT (923.01) ONLY |

### ASSESSMENTS

| | COUNT(S) | | | |
|---|---|---|---|---|
| Fine | | | | |
| Waive C/C | | | | |
| Suspend | | | | |
| Court Costs | | | | |
| Late Chg | | | | |
| Other | | | | |

**Total**
$

**Payable on or before _____**
Payment Information Shown on Reverse Side
Fine/Court Costs Reduced to a Civil Judgment

| FTA NOT DISMISSED | FTA DISMISSED |
|---|---|

MANDATORY COURT COSTS WAIVED

$ _____ SUSPEND ALL BUT $ _____

### ADDITIONAL ASSESSMENTS

$ _____ INVESTIGATIVE COST FOR
_____ (Agency)

PUBLIC DEFENDER LIEN IN THE AMOUNT OF _____

PUBLIC DEFENDER LIEN REDUCED TO A CIVIL JUDGMENT

$40.00 PD FEE ASSESSED

To be paid by: _____

Investigative Costs and Public Defender Liens must be paid to the Clerk of Court

### ASSESSMENT ALTERNATIVES

_____ HRS COMMUNITY SERVICE CONVERTED
TO $ _____ PAYABLE BY _____

FINE CONVERTED TO _____
COMMUNITY SERVICE HOURS TO BE COMPLETED BY _____

MAY PERFORM COMMUNITY SERVICE AT THE RATE OF $ _____ PER HOUR IN LIEU OF FINE BY _____

**COURT COSTS MAY NOT BE CONVERTED TO COMMUNITY SERVICE HOURS**

### REMARKS

_Se Order of this Status hearing to follow_

DONE AND ORDERED THIS _10_ DAY OF _Dec_ 19_95_ _Viora_

BREVARD COUNTY, FLORIDA

AND FILED IN OPEN COURT _1 p_ M.

### DEFENDANT'S NAME AND ADDRESS:

GREEN, CROSLEY ALEXANDER
5658 BRIERCLIFF
MIMS                    FL 32754

ML001542

JUDGE/OFFICIAL/DEPUTY CLERK

LAW 134
REV. 4/98

ORIGINAL: COURT FILE    [ ] DEFENDANT   [ ] STATE ATTORNEY   [ ] PUBLIC DEFENDER/DEFENSE COUNSEL
[ ] SHERIFF: JAIL/WARRANTS   [ ] CRIMINAL LAW   [ ] PROBATION/COMMUNITY SERVICE/OTHER