UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CROSLEY ALEXANDER GREEN,

    Petitioner,

v.    Case No: 6:14-cv-330-RBD-GJK

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.

# ORDER

This cause is before the Court on Petitioner's Motions for the Immediate Release of Crosley Green ("Motions for Immediate Release," Doc. Nos. 97, 101).[1] Respondents have filed Responses ("Responses," Doc. Nos. 106, 107).[2] Petitioner requests that "the Court . . . reweigh the *Hilton*[3] factors in light of his current, changed, circumstances, and to release him from continued unconstitutional incarceration." (Doc. 97 at 27).

---

[1] Doc. 97 is the redacted version of the Motion for Immediate Release, while Doc. 101 is the unredacted version of the Motion for Immediate Release filed under seal.

[2] Doc. 107 is the redacted version of the Response, while Doc. 106 is the unredacted version of the Response filed under seal.

[3] *Hilton v. Braunskill*, 481 U.S. 770 (1987).

## I. PROCEDURAL BACKGROUND

On July 20, 2018, the Court granted in part and denied in part Petitioner's Amended Petition for Writ of Habeas Corpus. (Doc. 70.) Specifically, the Court conditionally granted the writ of habeas corpus as to Issue One of Claim One, within ninety days from the date of the Order, unless the State of Florida initiated new trial proceedings in state court consistent with the law. All remaining claims were found to be without merit, and habeas relief was denied with prejudice as to those claims. The parties appealed to the Eleventh Circuit Court of Appeals ("Eleventh Circuit"), and the appeal remains pending. (Doc. Nos. 77, 81.) On September 5, 2018, the Court granted Respondents' Motion for Stay Pending Appeal. (Doc. 83.) On January 7, 2019, the Court denied Petitioner's Motion for Release Pending Appeal. (Doc. 87.)

Due to COVID-19, Petitioner moved in the Eleventh Circuit for immediate release on August 7, 2020. On September 14, 2020, the Eleventh Circuit denied the motion without prejudice to Petitioner moving in this Court for immediate release. Petitioner failed to file a motion for immediate release in this Court, and, on March 3, 2021, the Court entered an Order directing Petitioner to file a status report regarding his incarceration during COVID-19 and whether he intended to file a motion for immediate release in this Court. (Doc. 93.) Petitioner filed a Status

Report on March 17, 2021 (Doc. 94), and Respondents filed an Objection on March 18, 2021. (Doc. 95.)

## II.   ANALYSIS

Petitioner states that the "reasons stated by the Court in January 2019 for keeping Mr. Green confined no longer exist and are overshadowed by the subsequent wildfire spread of COVID-19 throughout the country—and in Mr. Green's facility with no certain end in sight." (Doc. 101 at 8.) Petitioner asserts that he is at increased risk of dying from COVID-19 because of his age (63 years old), recent exposure to tuberculosis (for which he is undergoing treatment), history of high blood pressure, and race (African-American). (*Id.* at 7, 16.) Petitioner requests that the Court "grant his release from forcible exposure to COVID-19 pending the conclusion of the State's appeal (and potential retrial) . . . ." (*Id.* at 8.) Petitioner "is not seeking to lift the stay of the 90-day re-initiation order, and this Court can sustain that part of the stay order while at the same time releasing Mr. Green." (*Id.*)

Respondents counter that "the institution where Green is housed currently has no active cases of COVID-19 and the mortality rate of inmates in the Florida Department of Corrections remains less than that for the State of Florida at large." (Doc. 106 at 6.) According to Respondents,

> even with the TB re-exposure diagnosis, for which he is being treated, (his race, age and hypertension would also, presumably, make him

3

>  more susceptible to COVID-19 outside of prison, too), Green is much less likely to be exposed to COVID-19 at Calhoun Correctional Institution where he is incarcerated (especially since there are no active cases at Calhoun Correctional Institution) than the State of Florida at large if he were released.

(*Id*. at 8). Respondents assert that Petitioner "has failed to demonstrate special reasons to justify his immediate release, *i.e.*, a substantial change in circumstances or irreparable harm, based upon COVID-19." (*Id*.)

There is a presumption of release pending appeal where a petitioner has been granted habeas relief. *See Hilton v. Braunskill*, 481 U.S. 770, 774 (1987). However, this presumption can be overcome if the traditional factors regulating the issuance of a stay weigh in favor of granting a stay. These factors include the following: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id*. at 776. However, "[a] court is to consider three additional traditional stay factors if the habeas petitioner were to be released: (1) the possibility of flight; (2) the risk of danger to the public; and (3) the state's interest in continuing custody and rehabilitation of the petitioner while the case is pending appeal." *Kelley v.*

*Singletary*, 265 F. Supp. 2d 1305, 1307 (S.D. Fla. 2003) (citing to *Hilton*, 481 U.S. at 777).[4]

The Court determines that, because of the impact of the COVID-19 pandemic and the length of time to resolve Petitioner's appeal, the *Hilton* analysis of whether Petitioner should be released during the pendency of his appeal should be revisited.

As to the first factor, although Respondents have raised several debatable issues, they have failed to show a strong likelihood of success on appeal.

Next, with regard to the second factor, at this stage of the proceedings, there is no indication that Respondents will be irreparably injured in the event of Petitioner's release. Petitioner would be substantially injured since the Court has already reversed his conviction and ordered a new trial. Further, a "prisoner whose conviction is reversed by this Court need not go free if he is in fact guilty, for [the state] may indict and try him again by the procedure which conforms to

---

[4] In addition, Federal Rule of Appellate Procedure 23(d) provides that an initial order "governing the prisoner's custody or release . . . continues in effect pending review unless for special reasons shown to the court of appeals or the Supreme Court, or to a judge or justice of either court, the order is modified or an independent order regarding custody [or] release . . . is issued." The Court finds that it has authority to rule on the pending motion whether it is considered an initial decision on the merits of Petitioner's custody or an independent order under Rule 23(d). *See Myers v. Superintendent, Indiana State Prison*, No. 1:16-cv-02023-JRS-DML, 2020 WL 2803904, at *3 (S.D. Ind. May 29, 2020).

constitutional requirements." *Hughes v. Vannoy*, No. CV 16-00770-BAJ-RLB, 2020 WL 2570032, at *2 (M.D. La. May 21, 2020) (citation omitted) (quotation omitted).

The third factor weighs in favor of release. Petitioner has been incarcerated over thirty years and has been described as a "model prisoner" by the Warden of Calhoun Correctional Institution ("Calhoun"), where he is currently incarcerated. (Doc. 97-1.) In addition, the COVID-19 pandemic has further amplified Petitioner's interest in release because of his age and medical issues. Although at present there does not appear to be an outbreak of the virus at Calhoun, that facility has had COVID-19 related deaths in the past. (Doc. 106 at 7.)

As to the fourth factor, the Court concludes that Respondents have failed to establish that Petitioner poses any risk to the public. "While there is no overstating the significance of the crimes [Petitioner] was convicted of, there is also no discounting the impact of [over thirty years] in prison on who [Petitioner] is today." *Waiters v. Lee*, 168 F. Supp. 3d 447, 453 (E.D.N.Y. 2016). As noted above, Petitioner has been described as a model prisoner by the Warden of Calhoun. Additionally, the public has a strong interest in the release of a prisoner whom the Court has found to be incarcerated in violation of the Constitution. The Court finds that the public interest weighs is favor of granting release pending appeal.

As to the three additional stay factors, Respondents have not offered any evidence to suggest that Petitioner is a flight risk or that Petitioner poses a danger

to the public. Petitioner is 63 years old and has high blood pressure and hypertension. Finally, the public has little interest in Petitioner's continued custody since he poses no danger to public safety and is not a flight risk. Any potential risk is sufficiently mitigated by the imposition of supervision and other conditions of release such as home confinement and location monitoring, imposed pursuant to the Court's authority under Federal Rule of Appellate Procedure 23.[5] Therefore, the State has little to gain from the continued incarceration of Petitioner, whom the Court has already determined is in custody in violation of the Constitution.

In sum, after considering each of the *Hilton* factors and all other relevant factor, the Court concludes that they weigh in favor of granting Petitioner's release during the pendency of his appeal subject to conditions.

### III.   CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Petitioner's Motions for the Immediate Release of Crosley Green (Doc. Nos. 97, 101) are **GRANTED**.

---

[5] The Court notes it has authority under Rule 23 to impose conditions of release over and above the possible imposition of a surety. *See O'Brien v. O'Laughlin*, 557 U.S. 1301, 1303 (2009); *Young v. Hutchins*, No. 2:12-cv-00524-RFB-NJK, 2021 WL 201477, *13 n.11 (D. Nev. Jan. 20, 2021); *Myers v. Superintendent, Ind. State Prison*, 1:16-cv-02023-JRS-DML, 2020 WL 2803904, *7–8 (S.D. Ind. May 29, 2020).

2. Petitioner's counsel shall notify the Warden of Calhoun of the issuance of this Order so that its provisions can be put into effect as quickly as possible.

3. Petitioner Crosley Green is to be released from custody into the custody of his brother-in-law, David Peterkin, during the pendency of the appeal with the Eleventh Circuit.

4. Petitioner shall proceed immediately to Mr. Peterkin's residence in Titusville, Florida, where he shall reside during the pendency of the appeal unless otherwise ordered by the Court.

5. Petitioner will be supervised by the United States Probation Office for the Middle District of Florida. Petitioner must make contact with the U.S. Probation Office for the Middle District of Florida Orlando Division, 401 W. Central Blvd., Suite 1400, Orlando Florida, within **72 hours** of his release from the Florida Department of Correction facility where he is currently housed. He shall continue to report to the Probation Office periodically as directed by the Court or the Probation Office.

6. During his release Petitioner shall participate in the Home Detention program until released by this Court. During this time, Petitioner will remain at the residence of his brother-in-law, Mr. Peterkin, except for

medical appointments, religious activities, essential shopping, employment and other activities approved in advance by the probation office. Petitioner will be subject to the standard conditions of Home Detention adopted for use in the Middle District of Florida, which may include the requirement to wear an electronic monitoring device and to follow electronic monitoring procedures specified by the probation office. Further, Petitioner shall be required to contribute to the costs of these services not to exceed an amount determined reasonable by the Probation Office based on his ability to pay.

7. Petitioner shall not commit any federal, state, or local crime.

8. Petitioner shall not unlawfully use or possess a controlled substance. The Court may subsequently order periodic drug testing.

9. Petitioner shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

10. Petitioner shall appear in court as required and surrender to serve any sentence, as ordered by a court.

11. Petitioner shall not obtain a passport.

12. Petitioner shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the Probation Office.

13. Petitioner shall permit a Probation Officer to visit him at any time at home or elsewhere and shall permit confiscation of any contraband observed in the plain view of the Probation Officer.

14. Petitioner shall notify the Probation Office within 72 hours of being arrested or questioned by a law enforcement officer.

15. The stay pending Respondents' appeal shall remain in effect to the extent that the Court ordered a retrial within ninety days from the date of its Order of July 27, 2018 (Doc. 74).

**DONE** and **ORDERED** in Orlando, Florida on April 6, 2021.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of Record
Warden of the Calhoun Correctional Institution,
　　Florida Department of Corrections